**FIXICO v. MING et at.**

No. 26424. March 24, 1936.

Q. D. Gibbs, for plaintiff in error.

Joseph J. Rosenbloom, for defendants in error.

PER CURIAM. This cause originated in the probate court of Okmulgee county. Doctors C. M. Ming, W. C. Vernon W. C. Mitchener. L. B. Windham, and W. W. Stark, copartners, doing business under the firm name and style of Okmulgee Clinic, and who will be referred to herein as the Clinic, filed a petition in the guardianship case of Katie Fixico, now Daniels, an adjudicated incom-

petent full-blood Creek Indian, with an itemized statement of professional services rendered attached, asking for an order of payment. The statement included medical treatment and surgical treatment for Ned McFarland, Maryland Harjo, Sadie Tiger, Sulter Fixico and Mrs. Sulter Fixico, in the total sum of $716; the principal items are those of $350 for an operation on Sulter Fixico and $260 for medical treatment for Mrs. Sulter Fixico. Upon a hearing of the claim in probate court, the probate judge allowed and ordered paid items in the amount of $106, and disallowed the balance of the items, amounting to $610. All items were ordered paid except those for the operations and treatments of Sulter Fixico and his wife. All of those items which were allowed have been paid. From the order of the probate court disallowing the Fixico charges, the Clinic appealed to the superior court where a new hearing was had thereon, and at the conclusion thereof, the superior judge allowed and ordered paid the entire claim. From this order Katie Fixico, by her guardian, H. W. Metzgar, has appealed to this court.

The evidence taken in the superior court in support of the petition discloses that Katie Fixico had, long prior to the rendition of the professional services for which claim is made, been duly adjudged an incompetent person, and a guardian appointed over her estate, all of which those persons connected with the Clinic knew. During May, 1930, Katie Fixico called one of the doctors from the Clinic and requested that he administer a course of treatments to Mrs. Sulter Fixico. The evidence indicates that either Sulter Fixico or his wife were related to Katie Fixico, one or the other being her cousin, and were staying with Katie Fixico at least temporarily. On the night of June 25, 1930, Sulter Fixico received a severe head injury, resulting in a fracture of the skull, and he was brought to the Clinic by Katie and her husband, John Daniels, both of whom requested that medical and surgical treatment be administered, saying that Katie Fixico would pay for the same. Representatives of the Clinic attempted at that time to communicate with Mr. Rea, who was then guardian of Katie Fixico, but they were unable to reach him. The evidence further discloses that after the operation was performed, and after the course of medical treatment had been begun as to Mrs. Sulter Fixico, Mr. Rea, the guardian, was informed that the services were being rendered to these people, and that he did not interpose any objection, although the evidence is not clear that the guardian was advised that the services were being rendered upon the account of his ward. After the services had been rendered, the guardian was called upon to pay the charges, which he declined to do. The evidence further shows that it had been a custom of the doctors to render treatment to all persons brought into the Clinic by Katie Fixico, and payment for such treatment was made by the guardian; that there were at least two children living with her, and probably not related to her, who came in this class. One of the doctors testified that on another occasion the guardian had advised them to take care of any calls from Katie Fixico.

The question presented by this appeal is whether or not Katie Fixico, having been adjudged an incompetent person, and placed under guardianship, and not having been restored to competency, could, in the manner indicated by the evidence, bind her estate to pay an obligation of this character. We are unable to find any authority by which an incompetent person, under guardianship, can create a binding contract of this nature. To permit the making of such a contract would be in direct conflict with the purpose of the guardianship. Probate courts assume jurisdiction over such persons and their estates for the purpose of supervision and protection. If such persons were permitted to obligate their estates while under the supervision of probate courts, then probate proceedings of this character would be worse than idle gestures, because they necessitate the expenditure of money in their administration.

Section 9404, O. S. 1931, provides that after a person's incapacity has been judicially determined, he can make no conveyance or other contract until his restoration to capacity is judicially determined. This court, in the case of Nichols v. Clement Mortgage Co., 112 Okla. 155, 241 P. 167, held that where one has been adjudged incompetent and is under actual guardianship, such incompetent person's contracts are void. In the body of that opinion the court said:

"It is, therefore, concluded that it was the legislative intention by section 4983, supra, to render void the contracts of any person adjudged incompetent, as long as he should remain under actual guardianship; necessity and convenience alike demanding that the authority of the guardian should be free from conflicting acts of the adjudged incompetent."

Section 9402, O. S. 1931, provides that a person entirely without understanding has

no power to contract, but he is liable for the reasonable value of things furnished to him necessary to his support, or the support of his family. Counsel for the Clinic contends that Sulter Fixico and wife, being related to Katie Fixico and living with her, come within the provisions of the last section in that they were members of her family and the services rendered were necssary to their support. The proof is not even satisfactory that Sulter Fixico, or his wife, were related to Katie Fixico, the only evidence on this point being the testimony of one of the doctors that Katie had said that one of them was her cousin. The evidence indicates that they were at least temporarily residing with her, and that they were without funds with which to pay the bills. We must presume that Sulter Fixico and his wife were adult persons, in the absence of proof to the contrary. And regardless of the fact that they may have been related to her and without funds with which to pay their medical bills, the incompetent woman could not adopt these people into her family so as to bring them within the provisions of section 9402, supra. It would be a very commendable thing for one possessed of sufficient wealth and of mental capacity to judicially use such wealth to take care of obligations of others who were unable to do so, but no stretch of the imagination could give to the above provision of the statute such a meaning as would obligate the estate of this incompetent person for the medical bil's of Sulter Fixico and wife on the ground that such persons were members of the incompetent's family.

It is further argued that the guardian authorized, or assented to, the creation of these obligations. The evidence does not justify a finding that the guardian created the obligations, but an inference, at least, may be drawn that he later assented to them. There is no suggestion that the probate court authorized the making of such obligations, and without the authority from the probate court, the guardian could not bind his ward's estate for obligations of this character. Tucker v. Leonard, 144 Ok'a. 264, 291 P. 124; William Cameron & Company, Inc., v. Yarby, 71 Okla. 79, 175 P. 206.

We, therefore, conclude that the bills presented were invalid charges against the estate of Katie Fixico, an incompetent, and could not lawfully be charged to her. The order of the superior court of Okmulgee county is, therefore, reversed, with directions that the petition of the Clinic be denied.

The Supreme Court acknowledges the aid of Attorneys A. L. Jeffrey, Welcome D., Pierson, and John H. Halley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Jeffrey and approved by Mr. Pierson and Mr. Halley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.