## NICHOLS et al. v. CLEMENT MORTGAGE CO.

No. 13883—Opinion Filed July 7, 1925.

Rehearing Denied Oct. 20, 1925.

**1. Insane Persons—Contracts—Incompetents —Presumption from Licensed Marriage.**

By the provisions of Comp. Stat. 1921, sec. 4983, contracts of adjudged incompetents are void until restoration to capacity has been judicially determined, but under the provisions of Comp. Stat. 1921, secs. 7488, 7492, and 7497, the county judge, or the clerk under his direction, must find that applicants for marriage license are "legally competent of contracting" before a license shall issue. Therefore, where a person was adjudged incompetent in 1909 because of excessive use of intoxicating liquor, and in 1917 the judge of the county court in which such guardianship was pending permitted a marriage license to issue to the adjudged incompetent, the legal capacity of the parties at that time to contract and the validity of the marriage so authorized are supported by the strongest presumption known to the law.

**2. Same—Validity of Mortgage.**

In such a case, where such adjudged incompetent and his wife thereafter execute a mortgage to secure a loan of money at a time when there is no actual guardianship being exercised, and the mortgagee acts in good faith in reliance upon the validity of the marriage and without actual notice of the pendency of the guardianship proceedings, such mortgagee will be protected in its rights unless it clearly appears from the evidence that the adjudged incompetent was in fact incompetent at the time of executing the mortgage.

**3. Same—Conflicting Statutes—Construction to Harmonize—Legislative Intent.**

It being apparent that a strict construction of the language of section 4983, supra, would bring it in direct conflict with the provisions of sections 7488, 7492, and 7497. supra, as applied to the facts in the instant case, such language should receive a liberal construction if by so doing they can be harmonized and all made effective. Evi-

dently the legislative intent in section 4983 was to avoid acts of the incompetent in conflict with the authority and powers of the guardian. This legislative intent is effectuated by construing section 4983 to mean that contracts of the adjudged incompetent are absolutely void when there is an actual guardianship being exercised.

(Syllabus by Logsdon, C.)

Commissioners' Opinion. Division No. 1.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by Clement Mortgage Company, a corporation, against Clyde Nichols et al. Judgment for plaintiff, and defendants bring error. Affirmed.

Defendants answered by general denial, and further alleged the invalidity of the note and mortgage sued on by reason of the adjudication of incompetency entered against Clyde Nichols in the county court of Carter county February 20, 1909; alleged the pendency of said guardianship proceedings, and the continued incompetency of Clyde Nichols at the date of the execution of the note and mortgage, and that the proceeds of said loan so made by plaintiff to defendants were received and used by the defendant Edna Worley Nichols, and that Clyde Nichols received no benefit therefrom.

Upon the issues thus framed, the case was tried to the court May 3, 1922, and upon the trial the evidence developed substantially the facts alleged by the parties in their respective pleadings. The evidence showed that Clyde Nichols is a Chickasaw Indian of one-eighth blood, and is the allottee of the land in controversy; that he was adjudged an incompetent in 1909, and his mother was duly appointed, qualified and acted as guardian until her death in 1918; that in 1917, Clyde Nichols was married to Edna Worley by license duly issued by the clerk of the county court of Carter county, and that they have ever since lived together as husband and wife: that after the death of his mother in 1918, no other guardian was appointed for Clyde Nichols until in April, 1919, when J. M. Lanford was appointed; that the note and mortgage in question were executed February 8, 1919, during the time when there was no actual guardianship in existence for the estate of the said Clyde Nichols.

After hearing all of the evidence of the parties, the trial court made findings and entered its decree in favor of the plaintiff and against the defendants for the sum of $1,208 with interest thereon at 6 per cent. from date of judgment and for costs, including $120 as attorney's fee. After unsuccessful motion for new trial, defendants have brought the case here by petition in error with case-made attached for review.

Adams & Orr, for plaintiffs in error.

J. B. Dudley, for defendant in error.

Opinion by LOGSDON, C. All of the numerous assignments of error made in the petition in error are presented and argued in the brief of plaintiffs in error under the single proposition that:

"The court erred in rendering judgment in favor of the defendant in error and against the plaintiff in error."

This brings under review the entire record of the trial, and this being an equitable action, this court is authorized to consider and weigh the evidence and to affirm or reverse the decree, or to render a decree here in conformity with equitable principles and the rights of the parties.

Reliance for reversal is placed upon the provisions of Comp. Stat. 1921, secs. 4981, 4982, 4983, decisions of this and other courts construing these or similar statutes, and upon an adjudication of incompetency entered against Clyde Nichols by the coun-

ty court of Carter county on February 20, 1909. resulting in the appointment and qualification of a guardian, and that the adjudication of incompetency was never vacated. Section 4983 is the only one of the three sections above cited which it is material to consider in the determination of this cause. Said section reads:

"After his incapacity has been judicially determined a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined."

It is urged in the argument that the common-law rule, which rendered the contracts of one non compos voidable merely and not void, is abrogated in all jurisdictions having statutory provisions such as those above cited, and that the adjudication of incompetency is binding upon the world until vacated. This is considered to be a correct statement of the legal effect of such adjudication and is supported by authorities cited in the brief of defendants as follows: Elliott on Contracts, vol. 1, sec. 378; Hughes v. Jones (N. Y.) 15 Am. St. Rep. 386; Redden v. Baker, 86 Ind. 191; Kiehne v. Wessell, 53 Mo. App. 667; Mainzer v. Avrid, 177 N. Y. Supp. 596; Flach v. Gottschalk Co. (Md.) 71 Am. St. Rep. 412; L'Amoureux v. Crosby (N. Y.) 22 Am. Dec. 655; Devin v. Scott, 34 Ind. 67; Fitzhugh v. Wilcox, 12 Barb. 235; Wadsworth v. Sherman, 14 Barb. 169.

However, like most general rules announced to meet general conditions, this rule has its well defined and generally recognized exception. In the case of Thorpe v. Hanscom (Minn.) 66 N. W. 1, the court, after stating the general rule as here contended for by defendants, states the reason for the rule thus:

'This rule is based upon convenience and necessity for the protection of the guardian, and to enable him to properly discharge his duties as such. Without this rule it would be difficult, if not impossible, for the guardian to execute his trust, for in every action concerning the property of the ward he might be obliged to go before the jury upon the question of the ward's sanity, and one jury might find one way and another the other way."

The court then stated the exception to the rule in this language:

"Now, when the reason for the rule does not exist, the rule does not apply. Hence, if there is in fact no actual and subsisting guardianship, but the same has been prac-

tically abandoned, and the person who has been under guardianship, after such abandonment, makes a deed at a time when he is in fact of sound mind, and the contract is fair, the deed will be enforced though the guardian has not been discharged by any judicial action."

The facts in the Hanscom Case are very similar to those in the instant case, except that the guardian in that case was not dead when the mortgage assailed was executed. The statutes of Minnesota of 1888, which were in force when the case arose, are very similar in their provisions relating to the disabilities of adjudged incompetents to our own statutes above cited.

This exception to the general rule is recognized alike by text-writers and courts. Elliott on Contracts, vol. 1, sec. 378; Thompson on Real property, vol. 3, sec. 2835; Willworth v. Leonard (Mass.) 31 N. E. 299; Miller v. Rutledge's Committee (Va.) 1 S. E. 202; Elston v. Jasper, 45 Tex. 409; Mohr v. Tulip, 40 Wis. 66.

It appears in this case that in 1917 the defendant Clyde Nichols was married by license duly issued in Carter county and that he was then 31 years of age. Comp. Stat. 1921, sec. 7488, provides:

"Marriage is a personal relation arising out of a civil contract to which the consent of parties **legally competent of contracting** and of entering into it is necessary. * * *"

Section 7492, Id., provides:

"The judge or clerk of the county court of any county in this state, upon application in writing signed and sworn to in person before him by a person legally competent to make and take oath, * * * and being satisfied of the truth and sufficiency of such application, and, **that there is no legal impediment** to such marriage. * * *"

Section 7497, Id., provides: "If the judge of the county court before whom application for a marriage license is made shall be in doubt of the legal capacity of the parties for whose marriage such license is sought," he may require evidence in addition to that contained in the application, and unless satisfied as to legal capacity the license shall be refused. The county judge in whose court the guardianship of this alleged incompetent was then pending permitted a marriage license to issue. The legal capacity of the parties to the contract thus authorized to be entered into is supported by the strongest presumption known to the law. Plaintiff had a right to safely rely on this legal presumption in loaning money to these intermarried defendants on their promise to repay, the contract being ad-

mittedly a fair one. The marriage contract, de facto vacancy in the guardianship, and the legal presumption of competency from the issuance of the marriage license, are sufficient to overcome the absolute verity of the adjudication of incompetency entered in February, 1919, in the absence of satisfactory proof of actual incompetency at the time the contract here involved was entered into.

Section 4983, supra, and sections 7488, 7492, and 7497, supra, relate to the same subject-matter, viz., the legal capacity of parties to contract. Section 4983 was in force prior to statehood, while the other sections were enacted during the first legislative session after statehood. In Lewis, Sutherland, Statutory Construction, sec. 443, it is said:

"All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes in pari materia, are treated prospectively, and construed together as though they constituted one act. This is true, whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day. They are all to be compared, harmonized if possible, and if not susceptible of a construction which will make all of the provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment."

It is apparent that a strict construction of the language of section 4983, supra, in this case, would render it in conflict with sections 7488, 7492, and 7497, and would call in question the validity of the marriage contract entered into between the principal defendants. By giving to that language a liberal interpretation, as authorized by Comp. Stat. 1921, sec. 3563, in the light of the well-established exception to the general rule of incompetency, all of these sections may be harmonized and their language be given full force and effect. It is therefore concluded that it was the legislative intention by section 4983, supra, to render void the contracts of any person adjudged incompetent as long as he should remain under actual guardianship, necessity and convenience alike demanding that the authority of the guardian should be free from conflicting acts of the adjudged incompetent.

Plaintiff having relied upon the presumption of competency inherent in the marriage contract between the defendants, having no actual notice of the pendency of the guardianship proceedings, and having loaned its money fairly and in good faith, relying on the promise of defendants to repay, the trial court properly held the contract valid. While there was a conflict in the testimony as to the competency of Clyde Nichols at the time the mortgage was executed, the finding of the trial court that he was then competent is not clearly against the weight of the evidence.

For the reasons herein stated, the decree of the trial court foreclosing plaintiff's mortgage should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. p. 758, § 561 (1926 Anno.). (2) 32 C. J. p. 749, § 543 (1926 Anno.). (3) 32 C. J. p. 731, § 502; 36 Cyc. p. 1146.