In re HEATH.

HEATH et al. v. ARNOVITZ et al.

No. 6268. Decided June 22, 1942. (126 P. 2d 1058.)

See 28 Am. Jur. 656; 32 C. J. Insane Persons, sec. 172.

*Harley W. Gustin,* of Salt Lake City, for appellants.

*White, Wright & Arnovitz* and *Irvine, Skeen & Thurman,* all of Salt Lake City, for respondents.

PER CURIAM.

This is an appeal from a decree of the lower court adjudging that Joseph A. Heath is an incompetent, and appointing a guardian for his person and estate.

The petition was filed by an attorney who signed himself as attorney-in-fact for some of the heirs of Joseph A. Heath. He signed the names of the respondents to the petition. Appellants give five particulars in which they believe the lower court committed error. We recite them as they appear in appellants' brief:

Statement of the Particular Questions Involved

1. Does the petition state facts sufficient to authorize the relief prayed for?

2. Whether or not a proceeding of this nature can be initiated and maintained by an attorney in fact who neither professes to be a relative or friend of the alleged incompetent?

3. Whether or not, after judgment in a proceeding of this kind, can the court order a third party to deliver property of the alleged incompetent to the guardian when the property is held in trust by the third party without attacking the trust directly, and establishing incompetency at the time of the creation of a trust?

4. Whether or not a lay witness can express his opinion with reference to the ability of an alleged incompetent

to properly manage and take care of himself or his property, and if so what foundation must be laid?

5. The quantum of evidence necessary to establish the fact that a person is unable, unassisted, to properly manage and take care of himself or his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons and whether or not the evidence is insufficient in that regard.

The last of these particulars we believe to be the most important.

Respondents' counsel has prepared what he terms a Supplemental Abstract of Record which contains 163 printed pages limited entirely to his examination of the alleged incompetent. The matter was heard piecemeal in the summers of 1938 and 1939 and in the fall of 1939. A great amount of testimony was introduced. It was decided January 5, 1940. We quote the pertinent paragraphs of the lower court's Findings of Fact:

(Title of Court and Cause)

"Findings of Fact and Conclusions of Law

"II. That Joseph A. Heath is past seventy-two (72) years of age, having been born on the 18th day of September, 1865; that he is incapable of adequately caring for his person and that he is incapable of taking care of his property and effects; that he is unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons;

"III. That for many years last past he has not personally been able to attend to his own business affairs and that his mode of living has been such as to cause great mental distress to the children of Joseph A. Heath; that he has an estate from which he could be sustained in a decent standard of living and more in conformity with the amount of income which the said Joseph A. Heath receives.

"IV. That for many years last pass, the business affairs of Joseph A. Heath had been conducted by Henry O. Heath, his brother and Lawrence H. Heath, his nephew; that prior to June 10, 1937, Henry O. Heath and Joseph A. Heath owned a parcel of real property as tenants in common; that the said parcel of property is located upon the east side of State Street immediately below Ninth South Street,

Salt Lake City, Salt Lake County, State of Utah, and is the property upon which is situated the auto camp known as the Pioneer Auto Camp; that on the 10th day of June, 1937, Joseph A. Heath executed a deed to the said property conveying it to a corporation to be formed and to be known as the Heath Development Company; that the said Joseph A. Heath was not conversant with the provisions in the Articles of Incorporation of the said company and that he did not understand the nature of the transaction by which he conveyed his interest in the property to the Heath Development Company.

"V. That the said Joseph A. Heath owns 50% of the preferred stock of the Heath Development Company, and he also owns two shares of the common stock of the said Heath Development Company; that he also owns 900 shares of the capital stock of the Heath Investment Company; that he owns a parcel of real property known as 149 West Sixth South Street, Salt Lake City, Salt Lake County, State of Utah.

"That the Tracy Loan & Trust Company, a company authorized to do a trust business under the laws of the State of Utah, is qualified to act as guardian of the person and estate of Joseph A. Heath and is qualified to administer his business affairs and minister to his personal needs."

After the Tracy Loan & Trust Company was appointed and qualified as guardian, it filed a petition for a citation against Lawrence A. Heath and also against the incompetent, Joseph A. Heath. A citation was issued, directing each to appear and testify under oath as to certain stock belonging to the alleged incompetent. This procedure was odd if Joseph A. Heath was incompetent. Pursuant to the hearing upon the citation, the court directed Lawrence A. Heath to deliver the stock to the clerk who, in turn, delivered the stock to the guardian, pursuant to court order. This was done in spite of the contention that the stock was delivered to Lawrence A. Heath in trust. Appellants, in the one notice of appeal, include not only the decree appointing the guardian but the order upon the citation as well.

Just why two appeals were attempted as one does not appear. The matters are entirely separate. The citation arises out of a proceeding instituted by the guardian, ostensibly to recover, for the estate, property wrongfully retained by a third party. It assumes a valid guardianship. But the appeal from the decree appointing

the guardian raises the question of the validity of that guardianship. We know of no authority under our statutes for such appellate procedure. We do not entertain the appeal from the order upon citation.

Two doctors gave opinions in the case to the effect that Joseph A. Heath is competent. The testimony against him came principally from his heirs. The record discloses rather clearly that there is ill feeling between them and the alleged incompetent. We are not concerned with the question of responsibilities for such feelings.

What is meant by incompetency? Our statute says: Revised Statutes of Utah 1933, 102-13-20:

"The words 'incompetent,' 'mentally incompetent' and 'incapable,' as used in this title, shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

The section implies physical or mental defects which interfere with the rational functioning of the mind. If the mind functions rationally but the individual acts in a way commonly designated as eccentric—that is, his acts deviate from the usual principally because he is less susceptible to public opinion than are many of us— he is not incompetent. One may love gardening—it was so testified of Mr. Heath—and not be interested in anything else even to the extent of losing his property at the hands of unscrupulous friends or relatives. He may be foolish in the eyes of many of us, but he is not incompetent. Competency is not measured by one's ability to accumulate and hold the material things of life. Were it so, there would be many of our ministerial brethren—not to mention some of our learned judicial associates—behind mental bars.

Material loss in and of itself is a very dangerous bit of evidence from which to reason backward to a conclusion

of incompetency. Such loss may be attributable to
any number of causes such as indifference, laziness,
lack of education, poor business judgment, dislike of
a particular class of work or business—there are many pos-
sibilities. Thus in passing upon the question of incompe-
tency, we must determine if the evidence of loss is accom-
panied by evidence of physical or mental defect which in-
terferes with the rational functioning of the mind. Undue
influence arising from deep friendship for, or extreme con-
fidence in others, alone, is not evidence of incompetency, of
the victim. It may be the instrumentality used upon an in-
competent victim but there must be other evidence of that
incompetence. Strong mentalities are ofttimes the victims
of undue influence.

What about the present case? Counsel for respondents
put the alleged incompetent through a very searching, persis-
tent and severe cross-examination on matters pertaining to
his business. Many question involved matters of corporate
law. What was the result of this examination? Here is the
picture painted of the alleged incompetent: He is ignorant,
he lacks interest in business details, he has implicit confi-
dence in his brother and other relatives in whose hands he
has placed his affairs; he resents these incompetency pro-
ceedings and he much prefers shifting responsibilities to
the shoulders of others than to worry with them himself.
Such confusion as appears in his answers apparently arises
either from defective hearing or ignorance of facts or law
but those answers do not show a mind laboring under diffi-
culty in functioning.

In his brief, counsel for respondents quotes from the case
of *O'Reilly* v. *McLean*, 84 Utah 551, at page 557, 37 P. 2d
770, at page 772, as follows:

"Were the mental faculties so deficient or impaired that there was
not sufficient power to comprehend the subject of the contract, its
nature and its probable consequences, and to act with discretion in
relation thereto, or with relation to the ordinary affairs of life?"

In other words, the evidence must show a lack of power to function—not an unwillingness to or lack of interest in functioning, be the latter two ever so reprehensible as personal characteristics.

Counsel's cross-examination of the alleged incompetent supports the opinions of the doctors that he is competent.

Counsel for respondent maintains that if there is evidence to support the allegations of incompetency, the matter rests in the sound judgment of the lower court. This introduces us to the testimony of the witness for respondents. Such testimony brought out generally such facts as this: That the alleged incompetent counted dishes while he washed them, that his house was not very clean, that certain of his relatives ridiculed him, that he was one of the best gardeners in the State but that he didn't take any interest in financial matters.

Respondent cites the following cases wherein evidence was held sufficiently conflicting to be submitted to a jury: *In re Lamont's Estate*, 95 Utah 219, 79 P. 2d 649; *In re Coburn*, 165 Cal. 202, 204, 131 P. 352; *Estate of Schulmeyer*, 171 Cal. 340, 153 P. 233; *In re Reed's Estate*, 198 Cal. 148, 243 P. 674; *In re McConnell's Estate*, 26 Cal. App. 2d 102, 78 P. 2d 1043, 1044.

These cases are readily distinguishable from the case at bar. In the Lamont case, Mrs. Lamont deeded all her property to her son but testified that she didn't want him to have it. In the Coburn case, Coburn, when examined, could not recall such elementary facts as his mother's name, the maiden name of his wife, the names of his sister and brother, the fact that his father had been married twice, nor the month in which his second marriage had taken place. In the Schulmeyer case, two physicians testified that Schulmeyer's mind was materially affected, that he had very little knowledge of present events and that he had delusions. In the Reed case, medical witnesses testified that Reed suffered from hardening of the arteries in the brain and senile dementia. There was additional testimony to the effect that Reed was violent with his wife and

son with whom he had lived harmoniously for 20 years. In the McConnell case, two medical witnesses testified that the alleged incompetent was suffering from cataracts, arteriosclerosis and senile mental deterioration and that his condition was growing steadily worse. We find no such conflicting evidence in the case at bar to support a finding of incompetency.

Appellants contest the jurisdiction of the trial court on the ground that respondents' petition did not state facts sufficient to authorize the relief prayed for. Appellants filed a general and special demurrer to the petition, which demurrer was overruled. Sections 102-13-19 and 102-13-20, Revised Statutes of Utah 1933, require an allegation of residence and an allegation of incompetency such as renders alleged incompetent unable, unassisted, to properly manage himself or his property so that he would be likely to be deceived by artful or designing persons. Respondents' petition recites Heath's residence in Salt Lake County, sets forth his advanced age, and alleges that

"he has been in ill health to such extent that now his mind has become impaired from the effect thereof * * * and that he is unable, unassisted, to properly manage * * * himself or his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

Appellant's object that the nature of Joseph Heath's physical ailments is not disclosed by the petition and that the allegation that one is incompetent and liable to be imposed upon is a mere conclusion. Appellants cite cases wherein the testimony was inadequate to support an order of incompetency. These cases, in our opinion, have no bearing on the sufficiency of the pleadings. The conclusions as alleged are of fact rather than law, and, contrary to stating insufficient facts, we feel that the statement of more facts would have resulted in pleading of evidence.

The California District Court of Appeal recently held that in proceedings of this character, a petition is not sub-

ject to the test given to complaints in actions at law. *In re McConnell's Estate, supra.* In that case the court said that even if it conceded that, viewed as an ordinary action at law the petition was possibly open to special demurrer on the ground of uncertainty or want of facts to support averments of mere conclusions, nevertheless the allegations were sufficient to inform the court that it should interfere. We find no uncertainty or want of facts in respondent's petition and do not, therefore, question the sufficiency of the facts on general demurrer.

Appellant, by special demurrer, contends that a proceeding of this nature cannot be initiated and maintained by an attorney-in-fact who neither professes to be a relative or friend of the alleged incompetent. This demurrer raises two questions—first: The question of law as to whether an attorney-in-fact can sign a principal's name to legal pleadings and, secondly: Conceding he cannot, was the respondents' attorney a "friend" within the meaning of the statute which requires proceedings of this nature to be instituted by a relative or friend of the alleged incompetent?

As to the first point raised, respondents contend there is no rule of law which prohibits an attorney-in-fact from signing a pleading for his principal, claiming that the definition of attorneys-in-fact as "all agents employed in any kind of business except attorneys at law" merely intends to distinguish an attorney-in-fact from an attorney at law and to prohibit persons from employing an attorney-in-fact in place of an attorney at law to represent them in legal proceedings. In the present case respondents' attorney acted in a dual capacity—that of agent (attorney-in-fact) of Heath's daughters, and also as their attorney at law. The rule of agency allows a person to do by an attorney-in-fact anything, generally, which he may do in person. Joseph Heath's daughters could have signed this petition, hence their attorney did not exceed his powers as their attorney-in-fact in signing for them. Thus the petition was, in effect, signed by the daughters of the al-

leged incompetent and we are not concerned with respond-
ents' attorney's qualifications as a "friend" under the
statute.

In view of our decision upon the above matters, it is un-
necessary to discuss the appellants' Particular # 4 pertain-
ing to the expression of opinion by lay witnesses.

We are of the opinion that the decision of the trial court
was erroneous. Judgment and decree of the trial court is
vacated and set aside and the case remanded to the trial
court with directions to enter a decree in favor of appel-
lants and against respondents and dismissing the petition
on its merits. Costs to appellants.

WOLFE, Justice (concurring).

I concur but I reserve from my concurrence the impli-
cation contained in the opinion that there could not be
brought to this court in one appeal and under one notice
of appeal, the question of whether a gardian had been prop-
erly or validly appointed, and at the same time the ques-
tion as to whether such guardian if validly appointed, could
reduce certain property to his possesion. I think the result
arrived at makes it unnecessary to decide that question. In
this case the order appointing the Tracy Loan & Trust Com-
pany as guardian was signed on January 5, 1940. The order
directing delivery of stock certificates to the Tracy Loan
& Trust Company was made on March 13, 1940. The ap-
peal from both orders was taken in due time, computed
from January 5, 1940. I am not prepared to say that an
appeal in Probate cannot pick up more than one order, at
least if the orders appealed from were all made within the
time allowed for taking of an appeal from the first appeal-
able order. I am not prepared to say that where an order
in probate is considered final for the purposes of appeal,
other subsequent appealable orders may not all be taken
to this court in one appeal, if all are taken within the time
computed from the first order. I do not say that two such

questions may be taken on a composite appeal but I think under the results arrived at in this case it is unnecessary to decide that question.