368 P.2d 72

**HOME TOWN FINANCE CORPORATION, a corporation, Plaintiff and Appellant,**

**v.**

**Harold FRANK and Frances Frank, his wife, and Walker Bank and Trust Company, guardian of the Person and Estate of Harold Frank, Defendants and Respondents.**

No. 9467.

Supreme Court of Utah.

Jan. 8, 1962.

Cotro-Manes & Cotro-Manes, Salt Lake City, for appellant.

Gustin, Richards & Mattsson, Anderson, O'Rourke & Gleave, Vets Administration, Salt Lake City, for respondents.

WADE, Chief Justice.

Plaintiff, Home Town Finance Corporation, appeals from a summary judgment dismissing its action to collect a promissory note secured by a chattel mortgage and certificate of title to an automobile made by the defendants, Harold Frank and Frances Frank, designated his wife. The complaint names the Franks and the Walker Bank and Trust Company, guardian of the estate of Harold Frank, a war veteran, as defendants, but only the bank was served with summons and the summary judgment deals only with the liability of the bank as such guardian. Plaintiff Home Town Finance in its brief claims that none of the property on which there was a mortgage or a lien to secure this loan can be located in this state. Harold Frank is outside of the state, either in the Idaho State Prison or a mental hospital, and Frances Frank has returned to their native state, South Dakota.

The defendant bank was appointed guardian of the estate of Harold Frank, a war veteran, under our Uniform Veterans' Guardianship Act,[1] on April 24, 1957. There is no evidence in the record that Frank was incompetent except the allegation that he had been so rated by the United States Veterans Administration on examination, and that being so rated, the appointment of a guardian is a condition precedent to the payment of any money due him by such administration, and such facts are made prima facie evidence of the necessity for a guardian.[2] A note and mortgage was executed on or about May 25, 1958, after the guardian was appointed. No attachment or garnishment was issued or served upon anyone, and there was no court order which in any way restrained the bank from disposing of Frank's property pending the determination of this action.

Is a contract by a person whose estate is subject to a duly appointed and acting guardian void as a matter of law? That is the determinative question here presented. Only if the law requires an affirmative answer to this question is a summary judgment authorized in this case.[3]

Neither by statute nor court decision has it been determined in this state whether a person whose estate is under the control of a guardian can enter into a binding contract. By strong dictum in a case very different from this one we have indicated that all such contracts are void.[4] In a number of other cases we have thrown

1. See Title 71, Chapter 1, U.C.A.1953.
2. See Section 71-1-7, U.C.A.1953. Also Section 71-1-3, U.C.A.1953, which authorizes the appointment of a guardian when "it is necessary, prior to payment of benefits."

3. Bullock v. Deseret Dodge Truck Center, 11 Utah 2d 1, 354 P.2d 559, and Utah Rules of Civil Procedure, Rule 56(c) and annotations thereto.
4. See Andrus v. Blazzard, 23 Utah 233, 63 P. 888, 892, 54 L.R.A. 354, where we used the phrase, "the ward being civilly dead."

some light on this problem without directly deciding it.[5] We have often pointed out that there are varying degrees of competence necessary for the transaction of different kinds of business.[6] The cases from other jurisdictions with many and varying statutes and fact situations are hard to harmonize even in the same jurisdiction. Some hold that the appointment of a guardian is conclusive of the ward's incompetency to contract. In other cases such guardianship relation is held to be only prima facie evidence of such incapacity.[7]

The foregoing authorities deal with the legal capacity of a person under a guardian appointed pursuant to general guardianship statutes,[8] and none of them deal with a guardian appointed under the Uniform Veterans' Guardianship Act as is the case here. The cases construing the Uniform Veterans' Guardianship Act seem more favorable to the view that the guardianship statute is only prima facie evidence that the ward is incompetent to make a valid contract than general guardianship statutes. The cases generally hold that such guardianship is not conclusive of the ward's incompetency to contract.[9]

The federal regulation extant in 1957 when this appointment was made and in 1958 when the contracts here in question were agreed on, contains the following provision:[10]

"Title 38, Section 3.174. DEFINITION OF INSANITY AND INCOMPETENCY. For general purposes an insane person or lunatic may be defined as one who, while not mentally defec-

5. See Glenn v. Rich, 106 Utah 232, 147 P.2d 849, 152 A.L.R. 1241; In re Chongas' Estate, Fowles v. Porcker, 115 Utah 95, 202 P.2d 711, 714, where we said: "Chongas' recommitment to the mental hospital and Lepas' subsequent appointment as guardian of the person and property of Chongas are without weight upon the question of capacity since there was not at either time an adjudication of insanity." Also Cecil v. Cecil, 11 Utah 2d 155, 356 P.2d 279.

6. See In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682; Jimenez v. O'Brien, 117 Utah 82, 213 P.2d 337, two opinions; In re Heath, 102 Utah 1, 126 P.2d 1058; Valentine's Guardianship, 4 Utah 2d 355, 294 P.2d 696.

7. See Brisacher v. Tracy-Collins Trust Co., 10 Cir., 277 F.2d 519, where the following authorities are cited: 7 A.L.R. 584; 68 A.L.R. 1313; 44 C.J.S. Insane Persons § 112, p. 270; Butler v. Butler,

225 Mass. 22, 113 N.E. 577; In re Meinders' Guardianship, 222 Iowa 236, 268 N. W. 537; Turpin's Adm'r v. Stringer, 228 Ky. 32, 14 S.W.2d 189; Nichols v. Clement Mortgage Co., 112 Okl. 155, 241 P. 167; Thorpe v. Hanscom, 64 Minn. 201, 66 N.W. 1; Masters v. Jones, 158 Ind. 647, 64 N.E. 213; In re Kaplan's Guardianship, 187 Minn. 514, 246 N.W. 5; Carroll v. Carroll, 16 Cal.2d 761, 108 P.2d 420.

8. See Title 75, Chapter 13, Guardianship, U.C.A.1953.

9. 173 A.L.R. Anno. Uniform Veterans' Guardianship Act 1077, IV, Sec. 12; Morse v. Caldwell, 55 Ga.App. 804, 191 S.E. 479; Rentz v. King, 66 Ga.App. 292, 17 S.E.2d 896; In re Vaell's Estate, 158 Cal.App.2d 204, 322 P.2d 579; but see Rymer v. Smith, 38 Tenn.App. 414, 274 S.W.2d 643 for other viewpoint.

10. See Code of Federal Regulations (C.F.R.) Sec. 3.174.

tive or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior, and who is thereby rendered incapable of managing his own affairs or transacting business with ordinary prudence; or *who is dangerous to himself, to others, or to property; or who interferes with the peace of society; or who has so departed (become anti-social) from the accepted standards of the community to which by birth and education he belongs, as to lack the adaptability to make further adjustment to the social customs of the community in which he resides."* (Emphasis ours.)

The emphasized portions of these regulations show a number of regulations which are separated from the other provisions by the conjunctive, "or," which indicates that each of such provisions is intended as a complete statement of the requirements necessary to be shown in order to require the appointment of a guardian. Thus under one of such provisions all that is necessary to authorize a rating of incompetency and the appointment of a guardian is that the veteran "interferes with the peace of society." Neither this provision nor any of the other emphasized portions of these quoted regulations requires a rating of mental incompetency to transact ordinary business. From the foregoing it seems clear that these regulations do not require a finding by the Veterans Administration that a veteran is incompetent to transact business in order to authorize the appointment of a guardian over his estate.

These regulations were amended May 29, 1959, to read as follows: [11]

"(8) Sections 3.173 and 3.174 are revised in part to read as follows:

"DEFINITION OF MENTAL INCOMPETENCY. A mentally incompetent person is one who because of injury or disease lacks the mental capacity to contract or to manage his own affairs, including disbursement of funds.

"DEFINITION OF INSANITY. An insane person is one who, while not mentally defective or constitutionally psychopathic, except when a psychoses has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; or who interferes with the peace of society; *or who has so departed (become anti-social) from the accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjust-*

11. See cumulative pocket supplement to C.F.R.1961, Section 3.1531(8).

*ment to the social customs of the community in which he resides."*

The foregoing definitions, while divided into separate paragraphs, are substantially similar to the ones in effect in 1958, when the contracts here in question were entered into and still do not seem to require incompetency on the part of the veteran to understandingly negotiate a contract in order to authorize the Veterans Administration to rate such veteran incompetent.

The requirements for the appointment of a guardian of an adult under our guardianship statute are somewhat different from the requirement of the Uniform Veterans' Guardianship Act. Section 75–13–19, U.C.A.1953, authorizes appointment of "guardians for the persons and estates of persons who are insane or from any cause mentally incompetent to manage their property, * * *." Section 75–13–20 defines the words, "incompetent," "mentally incompetent," and "incapable" to mean "any person who, though not insane, is by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons." These statutes probably require an adjudication that an adult person is incompetent to manage his business affairs before the

appointment of a guardian is authorized. We need not decide this question.

Experience teaches, and our cases indicate, that in borderline cases the person might be mentally incompetent when a guardian was appointed, but soon thereafter recover his capacity to manage his business affairs and make valid contracts.[12] It is not unusual for a mental patient to be at first placed in a mental hospital or have a guardian of his person look after his personal affairs, but thereafter be discharged from the hospital and have the guardian of his person relieved from looking after him personally and establish his own home, be the head of his household and take care of his business transactions without any personal supervision of the guardian.

So in this case the record indicates that Frank was at first confined in the Veterans Mental Hospital at Salt Lake City, while at the same time he maintained a residence outside of the hospital, and thereafter he was released from the hospital and went back to his residence and continued to live with the woman whom he recognized as his wife; the residence contained his own furniture and he was driving his own car at the time of making the business transaction here in question. This situation seems to suggest that even though the bank as his guardian was handling the funds which were being paid to him by the Veterans Ad-

12. See cases cited in footnote 5.

ministration, still he was running his own home and his own business affairs without anything to indicate to the public that he was mentally incompetent to do so, or that there was an acting guardian.

■ We conclude that the better rule is that the appointment of a guardian is prima facie evidence of the incompetency of the ward, but that such prima facie case may be rebutted by evidence which shows that the ward was competent to understandingly manage his business affairs and enter into contracts at the time of making the alleged contract in question. Thus, there is a question of fact presented for the determination of the trial court of whether the ward was competent or not at the time of the making of the alleged contract, and the summary judgment was therefore not authorized. This does not mean that the guardian does not have full control and management, subject to court supervision, of the ward's property which has been placed in its custody, management and control.

The question of whether the property in the possession of the guardian is subject to execution is not before us at the present time. If the appellant is entitled to a judgment the question of what property may be made subject to the payment of such judgment is one for later determination. Whether the property in the custody of the guardian is subject to execution, and whether the court should order the guardian to pay the judgment out of the property in its custody and control is not before us now.

Summary judgment is reversed and the case is remanded to the district court, with costs to the appellant.

McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I believe the main opinion has missed the point. It seems to say that the appointment of a guardian for one having mental problems does not include an authority to protect the ward against his infirmities. It says an incompetent is only an incompetent during the pendency of his incompetence, unless another court, in a strictly civil action determines he is competent. Another court in another county might decide otherwise in an identical case. This inconsistency seems to give the lie to a sort of impotence of any legislation designed to notify the world of a ward's incapacity, warning against any contractual relationship with him. It is like saying that legislation designed to protect infants against their contracts and immaturity extends but to a factual determination, during such infancy, that a particular infant is a sort of Quiz Kid, and really not an infant if he displays the highly questionable genius of some adults.

**32**

Defendant was declared incompetent by the probate court. There has been no termination of that adjudication. He enjoyed or disenjoyed that coveted status at the time of this lawsuit. To say that being a veteran, there is a sort of limited guardianship, flies in the teeth of the adjudication and the facts. The probate court imposed no such limitation in its decree. This veteran is just as much an incompetent under the guardianship legislation and the decree of the court as any other adjudicated incompetent. We may as well say that an adjudged insane is not insane, if, in a civil suit, a court opines that he has done something that seems to reflect the action of a normal person.

Appellant concedes that the amounts put in trust for him are subject to plenary control by a duly appointed guardian, and are inviolate. But, he says, if the money draws interest or is converted into confederate currency, those questionable assets are executionable. This reasoning seems to do violence to the Veterans Administration's established policy of protecting the corpus of such a fund, places a rather ridiculous emphasis on the concept of transmutation, and quite clearly emasculates the spirit and letter of legislation designed to protect funds charged with a personal trust. The decision here could lead to fantastic abuse of the statutes and protective policies as to trust funds. The trial court should be affirmed, with costs to defendants.