**SURETY LIFE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Stephen W. RUPP, Trustee, as successor in interest to Melvin K. Burningham, Defendant and Appellant.**

**No. 890594–CA.**

Court of Appeals of Utah.

May 13, 1992.

J. Douglas Kinateder, Salt Lake City (argued), for defendant and appellant.

Clark W. Sessions (argued) and Michael T. Roberts, Campbell, Maack & Sessions, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and GARFF, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Appellant Melvin K. Burningham (Burningham) appeals the trial court's denial of his motion to set aside the trial court's grant of summary judgment in favor of appellee Surety Life Insurance Company (Surety Life). Burningham claims the trial court's grant of summary judgment violated the automatic stay provisions of federal bankruptcy law and was improper because there were material facts in dispute. We affirm.

## FACTS

In January 1987, Burningham and Markwest Corporation (Markwest) executed a promissory note and trust deed in the sum of $1,000,000, payable to Surety Life. The funds were to finance a recreational vehicle and commercial storage project in Draper, Utah, being developed by Markwest.[1] Burningham was involved in this project under the name Draper R.V. & Commercial Storage. Burningham and Markwest also executed a guaranty agreement with Surety Life in which Burningham and Markwest unconditionally guaranteed repayment of all sums under the promissory note (Guaranty Agreement).

When Burningham failed to pay the amounts due under the promissory note, Surety Life foreclosed on the Draper property securing the note and set a trustee's

---

1. This complicated transaction involved numerous participants that are not parties to this appeal, including Howard H. Hucks, president of Markwest, and United Savings and Loan Association, which provided additional financing for the Draper project. While, in his brief, Burningham creates confusion by reciting extraneous facts regarding these other parties, we recite only the facts necessary to resolve the issues before the court.

sale for February 1, 1988. On the day of the scheduled sale, Burningham and several others involved in the Draper property simultaneously filed a complaint against Surety Life and requested a temporary restraining order to block the trustee's sale. The trial court granted that order. On June 22, 1988, however, the court dissolved the temporary restraining order and denied Burningham's motion for a preliminary injunction. Two months later, the court dismissed Burningham's action against Surety Life.

Surety Life proceeded to sell the Draper property on July 27, 1988, recovering $700,-000. One day prior to this sale, on July 26, Burningham's son, Wayne Burningham, filed a petition on behalf of "Draper R.V. & Commercial Storage, a Utah Partnership" for Chapter 11 involuntary bankruptcy in the United States Bankruptcy Court. After the trustee's sale, Burningham claimed before the bankruptcy court that Surety Life had proceeded with the trustee's sale in violation of the automatic stay provision of United States bankruptcy laws. Because Draper R.V. & Commercial Storage claimed an interest in the Draper property, Surety Life moved the bankruptcy court for relief from the automatic stay. After a two-day trial, the bankruptcy court found the Draper property was not part of the bankruptcy estate and, therefore, granted Surety Life relief from the stay. The bankruptcy court also made a finding of fact that the Draper property had a fair market value of $700,000.

Surety Life thereupon brought suit against Burningham and others to recover the balance due on the promissory note following foreclosure. Surety Life later amended its complaint to consolidate the actions for breach of the Guaranty Agreement and for a deficiency judgment on the promissory note. On March 8, 1989, Surety Life filed a motion for summary judgment against Burningham based on the Guaranty Agreement. Burningham never

filed a memorandum of points and authorities in opposition to Surety Life's motion for summary judgment but filed the affidavit of Wayne Burningham questioning the fair market value of the Draper property.

In April 1989, the trial court granted Surety Life's motion for summary judgment, and Burningham filed a motion to set aside or vacate the summary judgment. Following a hearing on this and other motions, the trial court entered an order denying Burningham's motion to vacate.

■ On appeal, Burningham claims the trial court abused its discretion under Rule 60(b) of the Utah Rules of Civil Procedure in denying Burningham's motion to set aside or vacate the grant of summary judgment because: (1) Summary judgment was entered in violation of the automatic stay provided by federal bankruptcy law, (2) Burningham did not have capacity to execute the promissory note, and (3) there were material controverted facts as to the fair market value of the Draper property. We reverse a trial court's ruling on a motion to set aside a judgment under Rule 60(b) only where the trial court abused its discretion. *State v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989); *Van Der Stappen v. Van Der Stappen*, 815 P.2d 1335, 1337 (Utah App.1991).[2]

## AUTOMATIC STAY IN BANKRUPTCY COURT

■ Burningham argues the trial court erred in denying his Rule 60(b) motion to set aside the summary judgment because the filing of a Chapter 11 bankruptcy petition on behalf of Draper R.V. & Commercial Storage stayed the action brought by Surety Life against Burningham, a codebtor of that entity. Surety Life responds the bankruptcy petition filed on behalf of Draper R.V. & Commercial Storage was filed under Chapter 11 of the United States Bankruptcy Code, and therefore the automatic stay provision of Chapter 13, 11

**2.** During oral argument, Surety Life claimed this matter may be technically moot because of Burningham's filing and discharge in bankruptcy in the United States Bankruptcy Court. However, both parties agree the Order Re Bank- ruptcy Issues of August 5, 1991, signed by Judge Gregory K. Orme of this court and substituting the bankruptcy trustee for Burningham as the real party in interest, disposed of this issue. Thus, we proceed to the merits of the appeal.

U.S.C. § 1301(a) (1991), has no application to Surety Life's action against Burningham.

■ The bankruptcy code automatically stays actions against the bankruptcy debtor and against property of the bankruptcy estate. 11 U.S.C. § 362 (1991 & Supp. 1992). That section provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title....

*Id.* (emphasis added). By its own terms, this section applies only to debtors, not codebtors, a well-established rule recognized by courts and commentators. *See, e.g., Williford v. Armstrong World Indus.,* 715 F.2d 124, 126 (4th Cir.1983) (insulation of automatic stay "belongs exclusively to the 'debtor'"); *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."); *In re Casgul of Nevada, Inc.,* 22 B.R. 65, 66 (9th Cir. BAP 1982) ("We are unable to find any provision in section 362 that creates a stay in favor of any entity other than the debtor.").

In *In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D.Utah 1985), the United States Bankruptcy Court for the District of Utah held that Chapter 11 does not prohibit actions against codebtors:

It is well settled that Section 362 of the Bankruptcy Code, which stays actions against the debtor and against property of the estate, does not forbid actions against its nondebtor principals, partners, officers, employees, co-obligors,

guarantors, or sureties. The legislative history shows that Congress may have considered the issue of a general stay of actions against guarantors in reorganization cases, but apparently rejected such a blanket stay and limited co-debtor stays to Chapter 13. *See* 11 U.S.C. § 1301. As enacted, Chapter 11 contains no specific provision authorizing stays against nondebtor codefendants.

*Id.* at 856 (footnotes omitted).

Given this well-established rule of law, the bankruptcy petition filed on behalf of Draper R.V. & Commercial Storage did not automatically stay Surety Life's action against Burningham, a co-debtor. Therefore, the trial court did not abuse its discretion in refusing to vacate or set aside its grant of summary judgment in favor of Surety Life on grounds that it was entered in violation of the automatic stay.

## CAPACITY TO EXECUTE PROMISSORY NOTE

■ Burningham next claims the trial court erred in granting summary judgment because a genuine issue of material fact existed as to Burningham's capacity to execute the Guaranty Agreement with Surety Life. On appeal, Burningham claims he did not have capacity to execute the contract "for health reasons." Surety Life responds there "is not a shred of evidence in the record that Burningham was incompetent for health reasons, as he contends, when Burningham signed the Guaranty Agreement."

Even viewing the evidence and inferences in the light most favorable to Burningham, the record does not support Burningham's claim. While Burningham claims health problems caused him to believe the Guaranty Agreement and the promissory note were the same instrument, he failed to put forward *any* evidence supporting this claim before the trial court on summary judgment. In fact, Burningham even admits that there "is nothing in the record to explain defendant Melvin Burningham's health." Given this complete lack of evidence in the record, Burningham has failed to show there was any material issue of fact as to his capacity to contract, let alone

showing such an issue by clear, unequivocal, and convincing evidence. *Cf. Home Town Fin. Corp. v. Frank,* 13 Utah 2d 26, 368 P.2d 72, 74–76 (1962).

In sum, the trial court did not err in refusing to set aside the summary judgment because Burningham did not have capacity to execute the agreements.

## FAIR MARKET VALUE OF PROPERTY

 Finally, Burningham claims the trial court erred in granting summary judgment because a genuine issue of material fact exists regarding the fair market value of the Draper property. Surety Life responds the question of the project's value was not an issue before the trial court on summary judgment. The trial court granted summary judgment based on the Guaranty Agreement, not the promissory note.

The Utah Supreme Court has recognized that a guaranty agreement is separate from the principal obligation and, therefore, creates a separate and independent obligation. "Thus, a *guarantee of payment* is absolute, and the guaranteed party need not fix its losses by pursuing its remedies against the debtor or the security before proceeding directly against the guarantor." *Strevell–Paterson Co. v. Francis,* 646 P.2d 741, 743 (Utah 1982); *accord Valley Bank v. Larson,* 104 Idaho 772, 663 P.2d 653, 655 (1983) ("A guarantor may legally contract to waive a defense provided by anti-deficiency judgment statute.").

In the Guaranty Agreement, Burningham "unconditionally and absolutely guarantee[d] the due and punctual payment of the principal of the note, the interest thereon (including adjustments and increases therein) and any other sums due or which may become due thereon." The

agreement allows Surety Life to sell the secured property and provides that the guarantors, including Burningham, "hereby waive any defense to recovery against the guarantors of any deficiency."[3] By agreeing to the Guaranty Agreement, therefore, Burningham waived all defenses to an action by Surety Life to collect on the unconditional guarantee, and the fair market value of the property was irrelevant to enforcement of the Guaranty Agreement.

Accordingly, we conclude there were no material issues of fact as to the value of the property which precluded summary judgment based on the Guaranty Agreement.

## CONCLUSION

In sum, we reject each of Burningham's claims of error. We conclude the trial court did not err in refusing to set aside summary judgment as judgment was not entered in violation of the automatic stay, Burningham has failed to carry his burden of showing he did not have capacity to enter into the Guaranty Agreement, and there are no material issues of fact surrounding the fair market value of the Draper property that precluded summary judgment on Burningham's guarantee. Therefore, the trial court's denial of Burningham's motion to vacate the grant of summary judgment in favor of Surety Life is affirmed.

BENCH and GARFF, JJ., concur.

---

**3.** Burningham argues Utah Code Ann. § 57–1–32 (1990) guarantees him a trial on the issue of fair market value. That section provides in relevant part:

> At any time within three months after any sale of property under a trust deed, as hereinabove provided, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed, the amount for which such property was sold, and the fair market value thereof at the date of sale. Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.

*Id.*

By its own terms, this section applies to "an action ... commenced to recover the balance due upon the obligation" and does not apply to an action brought to recover under a separate Guaranty Agreement.