[No. 32905. *En Banc.* April 21, 1955.]

RICHARD B. METZGER *et al., Appellants,* v. HAROLD QUICK, *Individually and as Treasurer of Lewis County et al., Respondents.*[1]

[1]Reported in 282 P. (2d) 812.

*Metzger, Blair & Gardner,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann, John Panesko,* and *Edwin R. Johnson,* for respondents.

OTT, J.—This is an action for damages for an allegedly wrongful distraint and sale of personal property to satisfy a tax lien. At the close of plaintiffs' case, the court granted a nonsuit. From the order of dismissal, plaintiffs have appealed.

Plaintiff Richard B. Metzger died October 6, 1954, subsequent to this appeal. F. D. Metzger qualified as administrator of his estate and, as such, has been substituted as one of the appellants, by order of this court. For the purpose of this opinion, we shall refer to Richard B. Metzger as though he were the sole appellant.

July 28, 1948, appellant leased an abandoned mill and millsite, located in Lewis county, for a period of one year. In September, 1948, appellant had moved sufficient equip-

ment to the mill to start production. Late in 1949, he had moved in and was using all of the personal property involved in this cause of action.

In February, 1951, the treasurer of Lewis county observed a sheriff's notice of execution sale which described resaw mill equipment belonging to appellant. An investigation disclosed that the personal property had never been assessed on the personal property rolls since it had been in Lewis county. A supplemental assessment for the year 1950 was immediately made, as provided by RCW 84.40.080. The amount of the tax due was determined to be $79.72. A notice of the amount of the personal property tax due Lewis county was sent to the appellant by the county treasurer. Upon receipt of the personal property tax notice, appellant wrote to the treasurer February 25, 1951, to ascertain the description of the personal property upon which the tax was assessed, the date when the tax would be due, and why he was not previously notified, if the levy was for the year 1950. March 1, 1951, the deputy treasurer replied to appellant's inquiry as follows:

"In reply to your letter re- Personal Property Tax.

"Please find enclosed a copy of the assessment detail, you will be able to see what you are assessed for, the one detail is the assessment for last year, which has been supplemented for reason that your mill was not assessed in 1950, this tax is now due in the amount of $79.72. The second detail is the assessment for this year and the tax will become due next February 1952."

The personal property detail sheets which were enclosed in the letter itemized the equipment assessed as follows: one edger, one resaw, one planer, motors and compressors, one U. S. Army halftrack, fire pump, miscellaneous rollers, belts, etc.

The personal property tax became delinquent April 30, 1951. Thereafter, the appellant received a second notice advising that the tax was now delinquent. This notice contained a synopsis of the laws of the state of Washington with reference to the assessment, levy, and collection of taxes, and specifically informed the owner that delinquent

taxes could be collected without notice "and if necessary [the treasurer] may forthwith distrain sufficient goods and chattels to pay the same."

Appellant admittedly failed to pay the delinquent tax. At a time subsequent to receiving the second notice, appellant sold the U. S. Army halftrack for seven hundred dollars. The deputy treasurer visited the millsite on several occasions. He observed that the U. S. Army halftrack was gone and that the tool room had been broken into. In accordance with RCW 84.56.100, 84.56.110 [cf. Rem. Supp. 1949, §§ 11247, 11250], the treasurer elected to distrain the remaining property in order to collect the 1951 tax which was then delinquent, and to collect the 1952 taxes, the lien of which had attached to the property although those taxes were not yet due.

August 7, 1951, the treasurer took possession of the remaining property by posting a distraint notice (exhibit No. 2), which stated:

"You are hereby notified that in accordance with the revenue Laws of the State of Washington . . . , I, Harold Quick, Treasurer of Lewis County, have levied upon and *taken possession of the property,* hereinabove described, and you are hereby distrained from disposing of said goods or chattels, or any part thereof, until all taxes, interest, costs and accruing costs have been paid in full." (Italics ours.)

The notices of the sale of the property distrained were posted as the law directs.

The treasurer of Lewis county sent a copy of the notice of distraint and notice of sale to appellant by registered mail at his last known address. The letter was returned to the treasurer marked unclaimed.

August 17, 1951, the property was offered for sale, as provided by law, and sold for eight hundred seventy-five dollars. The taxes and costs totaled $161.44. The balance of the sale price was retained by respondent treasurer for the benefit of appellant.

Appellant testified that two steel strapping machines which he was leasing were sold by the treasurer. The only evidence offered by appellant was that, when he visited the

mill about two and one-half weeks prior to the sale, the strapping machines were then on the premises.

On appeal, appellant contends (1) that the property was unlawfully distrained for the reasons (a) that it was not taken into actual physical possession by the treasurer, and (b) that it was immovable property and constructive notice of distraint should have been given by filing notice in the office of the county auditor as provided by RCW 84.56.080 [*cf.* Rem. Supp. 1949, § 11247]; (2) that the treasurer should not have included in the sale notice the levy for 1951, being the tax for 1952; and (3) that sufficient evidence was introduced by appellant with reference to the sale of the leased strapping machines to take the case to a jury.

The county treasurer is charged by law with the duty of collecting delinquent personal property taxes. RCW 84.56-.020, 84.56.050 [*cf.* Rem. Supp. 1949, § 11244, Rem. Supp. 1941, § 11245].

RCW 84.56.070 [*cf.* Rem. Supp. 1949, § 11247] outlines the following procedure for collection of all personal property taxes:

(1) After February 15th of each year, the treasurer shall proceed to collect all personal property taxes. (This the treasurer of Lewis county did.)

(2) He shall give notice *by mail* to all persons charged with personal property taxes that the same are due and payable. (Appellant admits that he received this notice and made inquiry concerning the levy and tax.)

(3) If such taxes are not paid before they become delinquent, he shall *forthwith* proceed to collect them. (In the instant case, the treasurer sent a second notice informing appellant that the taxes were delinquent, and outlined the procedure for distraint and sale in the event the tax was not paid. The treasurer, instead of proceeding *forthwith* to collect the delinquent tax, waited from April 30, 1951, to August 7, 1951, before proceeding to distrain and sell the property.)

(4) If he is unable to collect the tax when due, the treasurer shall *prepare papers in distraint,* which shall con-

tain a description of the personal property, the amount of taxes due, the amount of accrued interest from the date of delinquency, and the name of the owner or reputed owner. (The appellant does not deny that proper papers of distraint were prepared and posted.)

(5) He shall, *without demand or notice,* distrain sufficient goods and chattels belonging to the person charged with such taxes to pay them, together with accrued costs. (Although the statute does not require any notice of the distraint, the treasurer of Lewis county sent a registered letter containing a copy of such notice and of the notice of sale to the last known address of the appellant. This letter was returned unclaimed.)

(6) He shall advertise the sale, by posting written notices in three public places in the county in which such property is distrained. (The notices of sale were posted as required by law.)

(7) Such notice shall state the time when and the place where the property will be sold. (The notices of sale were not challenged in this respect.)

Each and every one of the procedural steps with reference to perfecting a legal distraint and sale of movable personal property was fully performed by the treasurer of Lewis county.

Appellant contends that, in order to have been legally distrained, this property should have been taken into physical custody by the treasurer. In this regard, the county treasurer can, in his discretion, choose to distrain and take possession of the property in any one of several methods. He may take physical possession of it, he may appoint a keeper to watch over it, or he may take possession by simply posting a notice that he has distrained the property for the purposes of sale. Each of such methods is a distraint and *taking possession of the property.* In this case, the distraint notice, quoted above, stated that the treasurer was taking possession by simply posting the notice.

In the cases of *J. K. Lbr. Co. v. Ash,* 104 Wash. 388, 176 Pac. 550 (1918), and *State ex rel. Peoples Nat. Bank v. King County,* 36 Wn. (2d) 10, 216 P. (2d) 225 (1950), this court

specifically authorized distraint without physical possession simply by posting notices of distraint upon the property.

We therefore hold that, to distrain personal property, the county treasurers are not required by law to take physical possession of the property.

■ Further, where a county officer has discretion in the performance of his duties, we have consistently held that that discretion will not be questioned except for clear abuse. *State ex rel. Washington Toll Bridge Authority v. Yelle,* 197 Wash. 110, 123, 84 P. (2d) 688 (1938), and cases cited; *State ex rel. Becker v. Wiley,* 16 Wn. (2d) 340, 347, 133 P. (2d) 507 (1943), and cases cited; *Stoor v. Seattle,* 44 Wn. (2d) 405, 410, 267 P. (2d) 902 (1954), and cases cited. In the instant case, there was no abuse of discretion.

■ Appellant contends that RCW 84.56.080 [*cf.* Rem. Supp. 1949, § 11247] applies. The county treasurer has been given the right, by this statute, to determine whether the property is *incapable or reasonably impracticable of manual delivery.* The treasurer of Lewis county determined that the property was *reasonably practicable of manual delivery,* and that, therefore, it was not necessary to file the notice of distraint with the county auditor. That he did not abuse his discretion in so finding is borne out by the facts of this case, in that the appellant had moved the machinery up to the mill, and it is assumed that the purchaser moved it away.

■ Appellant next contends that the treasurer should not have included in the sale notices the tax for the 1951 assessment.

RCW 84.56.100 and 84.56.110 [*cf.* Rem. Supp. 1949, §§ 11247, 11250] precisely authorized the treasurer, in his discretion and under circumstances such as confronted him in this case, to distrain personal property and collect the amount to become due. We therefore find no merit in this contention.

Appellant also contends that two steel strapping machines which he was leasing were sold by the treasurer. No proof was offered to show that the items were on the premises at the time of the distraint, or that the treasurer took·possession

of the items in question, or that the purchaser bought or received the items claimed to have been wrongfully sold. Further, the treasurer's distraint and his notice of sale did not specifically include the machines.

■ The trial court must consider the evidence and all reasonable inferences therefrom most favorably to plaintiff (appellant in this case), when considering a motion to dismiss. *Gaasland Co. v. Hyak Lbr. & Millwork*, 42 Wn. (2d) 705, 257 P. (2d) 784 (1953).

Since there was no evidence presented by appellant from which a wrongful sale could be reasonably inferred, there was no issue of fact to submit to a jury, and therefore the trial court properly dismissed the action.

[6] Finally, appellant contends that, had the treasurer actually taken physical possession of the property, the appellant would have then had notice of the distraint.

The legislature saw fit to specifically waive notice of distraint when it provided that " . . . he [the treasurer] *shall without demand or notice distrain* . . . " (Italics ours.) If notice of distraint is desired, the legislature must provide for it. The judgment of the trial court is affirmed.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, HILL, DONWORTH, and WEAVER, JJ., concur.

FINLEY, J., (dissenting)—The facts are set out rather fully in the majority opinion. However, in this connection, I would point out the following:

(a) The notices left by the treasurer at the millsite were not easily available to public view, because they were posted inside of the building; and this may well have limited appellant's opportunities to become apprised of the contemplated distraint and sale.

(b) The treasurer's letters received by appellant merely informed him that delinquent taxes *could be* collected without notice, "and if necessary [the treasurer] may forthwith distrain sufficient goods and chattels to pay the same;" and appellant was not thereby clearly notified that his property would actually be distrained at a certain time and place unless the taxes were paid.

. (c) The notice sent by registered mail to appellant at his last-known address, that his property *actually* would be distrained and sold, was returned to the treasurer, marked, "unclaimed."

(d) The property involved was certainly capable of being moved or transported, because, as the majority point out, appellant had moved it to, and installed it in, the mill; but it was bulky property, or mill property reasonably impracticable of manual delivery, and this distinguished it from the garden variety of chattels, reasonably or easily capable of manual seizure or distraint.

(e) Appellant placed a value of several thousand dollars upon his property. It was sold by the treasurer, in bulk, for $875, to secure the relatively small sum of $161.44 for taxes.

At the conclusion of plaintiff Metzger's case, counsel for defendants challenged the sufficiency of the evidence and moved for a dismissal. The motion was granted, the jury released from duty, and the action dismissed. This appeal followed.

Appellant Metzger assigns error as follows:

1. The court erred in sustaining respondents' objections to appellants' questions as to whether or not the statutory notice of distraint and sale *had been filed with the county auditor at least thirty days prior* to the sale, and whether a copy of said notice had been sent by registered mail to the taxpayer at *least thirty days before the sale.*

2. The court erred in sustaining objections, and refusing to allow appellants to testify as to the price paid for the machinery sold by the treasurer.

3. The court erred: (a) in sustaining the motion to dismiss; (b) in overruling the motion for a new trial; (c) in entering the order of dismissal.

The assignments of error raise three questions: (1) Was the property lawfully distrained and sold, or does Laws of 1949, chapter 21, § 2, p. 62 [*cf.* RCW 84.56.080] require notice to be filed with the auditor and sent to appellants thirty days prior to sale? (2) Was there sufficient evidence for the case to go to the jury on the question of whether the leased strapping machines were included in the sale? (3) Was the

evidence tendered by appellants as to the cost of the mill equipment improperly excluded?

Obviously, the first question involves consideration and interpretation of statutory provisions regarding the distraint and sale of property for nonpayment of taxes. It appears to me that our statutes provide for two basic types of distraint: (a) physical distraint, and (b) "constructive distraint." As to the former, Laws of 1949, chapter 21, § 2, p. 61, provide that when taxes are delinquent, the county treasurer "shall without demand or notice distrain" sufficient property of the taxpayer to pay the taxes. This statute then states that the sale shall not be held less than a certain number of days "after the taking of such property." I am convinced that this relates to and provides for a *physical* seizure, or physical distraint of property, which, generally speaking, might be said to be *movable* property, to secure payment of taxes

A portion of the same statute, Laws of 1949, chapter 21, § 2, p. 62 [*cf.* RCW 84.56.080], relates to *constructive* distraint rather than to actual *physical* seizure or distraint of property. This portion of the statute provides that, whenever it becomes necessary to distrain certain fixed property (naming specific items), "or any other personal property as the treasurer shall determine to be incapable or reasonably impracticable of manual delivery," it shall be deemed to have been distrained or taken into possession when the treasurer has, thirty days before the date fixed for the sale, (a) filed with the county auditor a notice of distraint and date of sale, and (b) mailed a copy of this to the property owner by registered mail at his last known address.

Now, keeping in mind these provisions respecting the two basic types of distraint (the first, generally speaking, applicable to *movable* property, the second, generally speaking, applicable to immovable property), which provisions, I think, tell *how* distraints must be made, let us turn to a consideration of other statutory provisions which seem to me to tell *when* property may be distrained.

In addition to the basic occasion for distraint, that is, when the taxes have become delinquent (Laws of 1949, chapter 21, § 2, p. 61 [*cf.* RCW 84.56.070]), there are three

statutory sections which provide that, under certain circumstances, a county treasurer may make a "jeopardy distraint" to prevent the taxpayer's property from being removed or dissipated so that it would become unavailable as a means of satisfying the taxes which are due or about to become due upon the taxpayer's personal property. The provisions for "jeopardy distraint" are (paraphrased):

1. When the tax is *delinquent,* and, in the judgment of the county treasurer, the personal property taxed is being or about to be removed from the state, or is being dissipated or about to be dissipated, the treasurer shall prepare papers in distraint, and shall, without demand or notice, distrain sufficient goods and chattels to pay the same. Laws of 1949, chapter 21, § 3, p. 63 [*cf.* RCW 84.56.090].

2. When the tax has been *levied but not paid,* and the treasurer has cause to believe that the personal property involved is about to be removed from the county or about to be destroyed, sold, or disposed of, he may demand such taxes, and, if necessary, may, without notice, distrain sufficient goods to pay the taxes. Laws of 1949, chapter 21, § 2, p. 62 [*cf.* RCW 84.56.100].

3. If, any time after the first of January of any year and before the levy of taxes in October of that year, personal property is being removed from the state, is being dissipated, or about to be dissipated, the treasurer may immediately distrain sufficient goods and chattels to pay the taxes to be levied. Laws of 1949, chapter 21, § 3, p. 63 [*cf.* RCW 84.56-.110].

It is the treasurer's contention that his actions, that is, distraint and sale of property herein involved, were authorized under the above-mentioned "jeopardy distraint" statutes, without the necessity of demand, notice, and actual seizure of movable property; and as to immovable property, without the necessity of demand, notice, or compliance with the statutory constructive seizure provisions of Laws of 1949, chapter 21, § 2, p. 62 [*cf.* RCW 84.56.080]. The argument seems to be, that, since the 1951 taxes had become delinquent, he could have been proceeding under Laws of 1949, chapter 21, § 3, p. 63 [*cf.* RCW 84.56.090], (paragraph (1) above), if, in his judgment, personal property upon which the 1951 tax was delinquent was being or was about to be removed from the state, or dissipated; or, the

argument may be that, since the 1952 tax had been assessed and not yet levied, the treasurer could have been proceeding under Laws of 1949, chapter 21, § 3, p. 63 [cf. RCW 84.56-.110], (paragraph (3) above), if the personal property in question was being or was about to be removed from the state, or dissipated.

Now I come to the crucial question as to whether the statutory provision which prescribes *how* a constructive distraint *must* be made applies to a distraint made under one of the jeopardy distraint statutes. To rephrase the question: If, in making a jeopardy distraint, the treasurer finds that there is property in danger of being removed or dissipated, and that such property is incapable or reasonably impracticable of manual delivery, must he comply with the constructive distraint statute, and (a) file a notice with the auditor, (b) mail a copy to the property owner thirty days before a sale may be made?

Respondents maintain that the *constructive distraint* statute, referred to hereinbefore, does not prescribe the sole means by which a *constructive distraint* may be effected. They rely upon the case of *J. K. Lbr. Co. v. Ash*, 104 Wash. 388, 176 Pac. 550, urging that it establishes an approved method for effecting a "constructive distraint" which is different than that prescribed by statute; Laws of 1949, chapter 21, § 2, p. 62 [cf. RCW 84.56.080]. Respondents urge that, in the *Ash* case, the court held that a valid distraint of railroad logging equipment, track and engines was accomplished by (a) *posting of notices of distraint at the site of the property*, and (b) the *mailing of such notices* to the property owner; in other words, that now, because of the *Ash* case, filing notice with the auditor and mailing a copy to the taxpayer thirty days before the sale are not necessarily essential requisites for a valid distraint.

Appellants, however, point out that the *Ash* case was decided in 1918, and that our constructive distraint statute was amended in 1933 by the addition of the provision which brought within the purview of that statute "any other personal property as the treasurer shall determine to be incapable or reasonably impracticable of manual delivery."

Appellants contend that this 1933 amendment was intended to, and did, change the rule which respondents ascribe to the *Ash* case by prescribing the sole method, other than physical seizure, by which, reasonably or practicably, immovable property may be distrained; that is, that filing notice with the auditor, and mailing a copy to the taxpayer thirty days prior to sale are absolute requirements.

I am considerably influenced by what seems to me to be a basic distinction involved in the actual seizure or distraint of (a) movable chattels, and (b) property not reasonably capable of manual seizure. In *Windsor v. McVeigh*, 93 U. S. 274, 23 L. Ed. 914, Mr. Justice Field said:

"The theory of the law is, that all property is in the possession of its owner, in person or by agent, and that its seizure will, therefore, operate to impart notice to him."

Thus, it can be said that property owners usually are presumed to know where their property is; in other words, that they keep track of it. Furthermore, if their property is seized and carried away by tax officials, this action in and of itself normally provides notice to the property owner, or the presumption is a most reasonable one, that the owner should know what has happened to his property. But as to property incapable of manual delivery, the situation may be quite different. The effect of posting notice on or about such property does not so convincingly support a presumption of notice to the owner as in the case of actual seizure of movable chattels. It is my view that the legislature recognized this distinction and established a different procedure for the distraint and sale of bulky property (so called) than for other personal property (so called movables). If the procedure for jeopardy or emergency distraint is to be the same as to both classes of property, I am convinced the procedure is more rigorous, less reasonable, and affords less protection to the property owner in one case than in the other.

In fairness to the treasurer, there is the practical argument that jeopardy distraint is an emergency measure to permit the treasurer to proceed quickly to seize and sell property which is, or appears to be, in imminent danger of being lost; that this procedure is a necessary, practical means of satisfy-

ing a property owner's taxes; that the treasurer should not be required to wait thirty days before he may seize and sell, because this would render ineffectual the emergency purpose of the jeopardy distraint statutes, in that the property may become lost or dissipated during the thirty-day period. Certainly, it may be argued, the legislature could not have intended to make it difficult and impracticable for the treasurer to perform his duties; that, therefore, the legislature must have meant that the *constructive* distraint statute should not apply to those cases where the treasurer is effecting a jeopardy distraint. But such argument overlooks the fact that the treasurer may actually seize *movable property*, and take it into custody, without prior notice. The seizure in itself would constitute adequate notice to the property owner. As to immovable property, he may readily comply with the constructive distraint statute, and just as readily may post a guard to prevent the property from being dissipated. Furthermore, the principal difficulty with this particular contention of the treasurer is the fact that, under the rule which must follow, property may be sold at a tax sale, although the owner has neither *actual* notice, nor constructive thirty-day notice, of the distraint and sale, and, therefore, no opportunity to pay his taxes and save his property before the sale takes place.

From my reading of the *Ash* case, *supra,* it appears that the taxpayer there involved had *actual notice* of the distraint and contemplated sale of his property. This distinguishes the *Ash* case from the case at bar. Consequently, it can offer no solace to respondents.

It is my best judgment that the language of the constructive distraint statute is sufficiently broad to encompass and apply to distraints of property which is incapable or reasonably impracticable of manual delivery. In other words, in the absence of *actual notice,* such as in the *Ash* case, *supra,* a distraint and sale of property of the abovementioned kind is invalid and not protected by law unless notice is (1) filed with the county auditor, and (2) mailed to the property owner at least thirty days before a distraint sale.

Incidentally, the result of the foregoing conclusion in a case such as the instant one is that, from the day the notice of distraint and sale is filed with the county auditor and a copy mailed to the taxpayer, the property, in the language of the constructive distraint statute, would "be deemed to have been taken into possession" by the county treasurer. The treasurer could thereupon, if necessary, maintain adequate guard or watch over the property to prevent any further removal or dissipation for the thirty days until a sale could be held.

Now as to appellants' contention that certain strapping machines, leased but not owned by Metzger, were sold by the treasurer at the tax sale: the only record evidence favorable to appellants was Metzger's testimony that he had been at the mill some two weeks or so before the sale and found that the strapping machines were still present on the property. There is other evidence to the effect that these machines were light and portable and could be carried about by a man. Two inferences are possible: (1) that the strapping machines were present at the mill on the sale date, and were sold by the treasurer; (2) that they were not. On a motion, such as here, testing the sufficiency of the evidence, we consider the evidence and reasonable inferences therefrom in a light most favorable to the party moved against. I think that appellants' evidence was sufficient to take the issue to the jury, and that the trial court erred in its disposition of this phase of the case.

I shall now discuss the question of the admissibility of evidence of original cost. Where there is no readily available market, or the market value is not fairly indicative of the value of the article (as in the case of wearing apparel or household goods and effects), our cases have allowed the introduction of evidence of original cost, if accompanied by evidence showing the extent and character of the use that an article has been subjected to, its condition, or its depreciation, at the date of conversion. *Kimball v. Betts,* 99 Wash. 348, 169 Pac. 849. Other jurisdictions require proof of the absence of any available market, or that the market price is not indicative of the true value of the article, before

allowing introduction of other evidence of value, such as original cost. 110 A. L. R. 1375.

In *Anstine v. McWilliams,* 24 Wn. (2d) 230, 163 P. (2d) 816, the plaintiff brought an action for the conversion of an automobile. She introduced evidence as to the price she had paid for the automobile less than four months before the date it was allegedly converted. In passing upon the question of admissibility of the evidence of original cost, the court said:

"Evidence introduced by respondent that she paid appellant $975 for the car was properly received, as the purchase price, if not too far removed in point of time, may be shown in such a case as this as tending to prove value at the time of conversion. Such evidence, however, standing alone, is not sufficient to support a judgment fixing a present value."

In *Yakima Finance Corp. v. Perkins,* 160 Wash. 379, 295 Pac. 189, which was an action for conversion of a truck, an objection was sustained to the admissibility of evidence regarding the value of the truck *three months before the conversion.* In connection therewith, the writer of the opinion quoted with approval the following passage from 42 C. J. 1295:

" 'Ordinarily the condition and value of a motor vehicle is to be determined as of the time and place of the loss or injury, but proof of its value theretofore or thereafter, *within a reasonable time under the circumstances of the particular case,* is proper, and the lapse of time affects the weight rather than the admissibility of the evidence. However, *where the length of time is unreasonable, the evidence is properly excluded.*' " (Italics mine.)

McCormick on Damages (1935) 176, § 46, after citing cases where the article converted had no market value, had just been purchased a day or so before the conversion, or was household or wearing apparel, states that evidence of original cost of the article may properly be admitted. The note to this section, in referring to the evidence of original cost, states:

"But, if too remote in time to shed light on present value, the trial judge in his discretion, may reject it."

1 Bonbright, Valuation of Property (1st ed. 1937), 144, states:

" . . . A court will quite properly exclude or ignore testimony as to actual cost when the property was acquired at such an early date or under such peculiar conditions that the transaction gives no proper basis for an inference as to present value."

And, subsequently, at p. 147, the author states:

"In other types of valuation, such as those presented under the laws of damages, of eminent domain, and of property taxation, the courts take their distinction between cost and value much more seriously; and in these fields most of the rulings as to admission or exclusion of testimony on actual cost may be accounted for on the hypothesis that testimony is to be admitted only in so far as it will aid the tribunal in estimating value. Where testimony of actual cost is presented, however, there is ground for suspicion that a jury—and even a court itself—is often led to make the award at least equal to this cost even though an appraisal expert would give it little weight in arriving at present value."

I think the exclusion of the evidence as to original cost was reversible error.

For the reasons stated hereinbefore, I think the cause should be remanded for a new trial.

ROSELLINI, J., concurs with FINLEY, J.