294 P.2d 696

In the Matter of the Guardianship of Florence S. VALENTINE, Alleged Incompetent.

No. 8415.

Supreme Court of Utah.

March 8, 1956.

Irwin Arnovitz, Salt Lake City, for appellant.

Fabian, Clendenin, Moffat & Mabey, Peter W. Billings, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from an order dismissing a petition filed pursuant to Section 75–13–19, U.C.

A.1953 for the appointment of a guardian of the property of the alleged incompetent. The order was made upon the allegations of the petition and the statement of petitioner in open court without any evidence being taken in support of the petition.

The petition was filed May 12, 1955 by Irwin Arnovitz by order and direction of A. H. Ellett, one of the Judges of the Third District Court. It appears that the order was made by Judge Ellett when Mr. Arnovitz, who had been acting as attorney for the minor children of Mrs. Valentine, and for the estate of her late husband, J. Howard Valentine, requested the court to relieve him from further representing them.

The petition sets out, among others, the following facts. Florence S. Valentine is the widow of J. Howard Valentine and the mother of their five children and is 47 years old. She and the children, after the death of J. Howard Valentine, were the owners of approximately 350,000 shares of stock of the Western States Refining Company. Shortly after the death of Mr. Valentine a suit was brought by the Western States Refining Company against Mrs. Valentine personally and as executrix of the estate of J. Howard Valentine and against her five minor children to cancel certain shares of stock in the Western States Refining Company, of which it was claimed had been illegally issued to Mr. Valentine, and for a money judgment for money alleged to have been wrongfully received by Mr. and Mrs. Valentine from the corporation and to recover the unpaid purchase price of certain stock. This was Case No. 98754 in the District Court, Salt Lake County, Utah. She had been represented by and had discharged two able attorneys prior to February, 1954, at which time petitioner was employed to represent her individually, as executrix of her husband's estate and as guardian ad litem of the minor children. The case was tried in April, 1954, and in January, 1955, a judgment was entered for cancellation of 73,311 shares of the capital stock of Western States Refining Company, and a money judgment of approximately $135,000.

It is then alleged in the petition:

"* * * that in the opinion of Irwin Arnovitz, the amount of the judgment entered is erroneous and should be reversed on appeal if not in toto, at least to the extent of 75% or more of the money value of the judgment entered; that Irwin Arnovitz advised Florence S. Valentine to take an appeal from the said judgment and while the appeal was pending to enter into negotiations for a settlement of this litigation and also of another suit that was pending against the said Florence S. Valentine, which suit was brought by one Sid Eliason."

It is further alleged that in about the month of November, 1953, before she employed petitioner, but after she had discharged her previous attorney in the West-

ern States Refining Company case, No. 98754, Mrs. Valentine signed an agreement giving D. M. Linney an option for the purchase within five years of 300,000 shares of the capital stock of Western States Refining Company at $1.00 per share for the consideration of $1,000.00. The stock so optioned by Florence S. Valentine was of the value of $500,000.00. On April 23, 1954, Mrs. Valentine permitted 50,000 shares of the said stock to be delivered to D. M. Linney for $25,000.00; she purchased the 50,000 shares of stock from the company approximately one year earlier for the sum of $100,000.00. Sid H. Eliason purchased the option from Mr. Linney and when Mrs. Valentine refused to perform the option, he brought suit for specific performance. This is Case No. 101780, District Court, Salt Lake County.

Mrs. Valentine was first represented in the latter action by Samuel W. Stewart, her uncle, who filed an answer. The answer alleged that the option was invalid. A few days before the case was set for trial Mrs. Valentine employed Herbert B. Maw, and he requested a continuance for two months to enable him to prepare for trial, and the court continued the case to May 2, 1955. Mr. Maw filed an amended answer in that case. Herbert B. Maw had attempted to get in touch with Florence S. Valentine to learn the facts in the case, but "was unable to reach her for some considerable period of time," and on the day of the trial, May 2, 1955, Mr. Maw did not know whether Florence S. Valentine would appear at the said trial or not; at 10:00 a. m. on the morning of May 2, 1955, Florence S. Valentine appeared in court.

In the statement made by petitioner he said:

"The plaintiff made their prima facie case and took until about 11:10 or 11:20, and Mr. Maw requested the matter be continued to give him an opportunity to discuss the case with Mrs. Valentine, so he would be prepared, and the case was to go on at two o'clock. And at two o'clock the case did go on further and Mrs. Valentine was requested to take the stand and remained on the stand most of the afternoon, until nearly five o'clock. There was one other witness put on to fill in the gap up to five o'clock. She wasn't cross examined on May 2nd, she was instructed to return the morning of May 3rd."

At 9:30 a. m. on May 3rd Mr. Maw received a telegram telling him to withdraw from the action before court opened on May 3rd and instructing him not to appear in court that morning. Mrs. Valentine did not appear at 10:00 o'clock on May 3rd, and at three o'clock p. m. the case was taken up and the default of Mrs. Valentine was entered followed by judgment "despite the fact that evidence had been introduced to bring this collateral agreement, which was signed by the other party to the option, and Mrs. Valentine

had written in her handwriting the option was ordered to be enforced. * * *"

The petition is very general and in the main so confused and contradictory as not to set out clearly facts that may be held up for examination. The principal complaint made is the refusal of Mrs. Valentine to take the advice of petitioner and appeal the judgments taken in Case No. 98754 by Western States Refining Company and in Case No. 101780 by Sid Eliason. It is alleged that Mrs. Valentine declined to appeal either of the judgments.

It is true that Mrs. Valentine has hired and discharged several attorneys. No facts are alleged indicating that her action constituted any evidence of her incompetence.

At the opening of the hearing on the incompetency matter petitioner made what is denominated an opening statement. Mr. Billings, counsel for Mr. Eliason, who obtained the judgment on the option agreement, presented his petition for leave to intervene and an order was made permitting intervention.

While petitioner was making his opening statement as to what he proposed to show, and which followed substantially the petition, counsel for Mr. Eliason, intervener, and the court presented some questions. After petitioner had made a lengthy statement the trial court inquired:

"The Court: Well what do you intend to show regarding her incompetency?

"Mr. Arnovitz: We are going to show she is unable to alone carry out her business affairs, which under our statute, comes under the definition of incompetency. * * *

"I have given a statement of what is involved in the matter. I think there ought to be such an interrogation of the party that this Court will itself be able to determine this matter on evidence, and if it should be decided to assign it to a full hearing, that this Court, or whoever would hear it, to be able to observe and to see the demeanor of the party and note the facts that will be adduced. We intend to substantiate the facts as stated."

Petitioner continued with his statement as follows:

"Mr. Arnovitz: Whether a person is incompetent he would have to be adjudged incompetent after the facts are proved in the trial."

"Mr. Billings: What other evidence do you have other than stated this morning in your statement?"

"Mr. Arnovitz: It would be this Court would have the right to observe witnesses."

At this point in the statement the trial court said:

"The Court: Well I doubt the sufficiency of those grounds, as stated, I doubt the sufficiency of any of those

grounds to prove this woman is incompetent."

Mrs. Florence Valentine was present in court during the making of the statement by petitioner. She asked to make a statement, which the court permitted. Her statement was quite full; at the conclusion of her statement the court commented:

"The Court: I think she is competent as far as that goes."

"Mr. Arnovitz: Mrs. Valentine is of the opinion the judgment rendered by Judge Jeppson is wholly erroneous, she is firmly convinced the case should have been decided the other way, and when a person is firmly convinced the case should be decided the other way there should be an appeal to ascertain that matter."

"The Court: That is no sign of competency or incompetency."

Counsel for the intervener moved the court to dismiss the petition on the ground that no facts were stated to warrant declaring Mrs. Valentine incompetent. In this motion Mrs. Valentine joined.

After the trial court entered an order dismissing the petition, petitioner filed an amendment to petition for appointment of guardian, in which it was set out that a large sum of money belonging to Mrs. Valentine was held by the Clerk of the District Court, and that she has paid no attention to the fact and has taken no steps to recover it for herself and her children. That the court in Case No. 98754

has cancelled 73,311 shares of stock of the Western States Refining Company by causing other certificates of stock to be issued. That Florence S. Valentine has taken no steps to reverse this action, relying upon her own peculiar views of the law, that the court is not able to cancel any of the stock belonging to the defendants so long as they do not obtain custody of the original certificate of stock. That the failure of Florence S. Valentine to take any action with respect to the monies on deposit with the Clerk of the Court and with respect to the cancellation of the shares of stock is a further case of her inability, alone and unassisted to care for her property.

At the hearing on the amendment, petitioner and Florence S. Valentine both appeared, and the Honorable Joseph G. Jeppson dismissed the same and observed:

" * * * And it appearing to the court that the petition of said Irwin Arnovitz had heretofore been dismissed under date of August 2, 1955, upon motion of the alleged incompetent and the intervener that the facts stated in the petition and the statement of Petitioner in Open Court as to what he proposed to prove did not constitute grounds upon which a guardian should be appointed and it appearing to the Court that the proposed amendment to the Petition did not submit any additional facts which would constitute grounds upon which a guardian should be appointed. * * *"

Petitioner seeks to have the orders reversed upon two grounds.

(1) That the court dismissed the petition without taking evidence and affording petitioner an opportunity to establish the fact of incompetence.

(2) That the incompetency of Mrs. Valentine was established and the court erred in dismissing the petition.

As heretofore pointed out when petitioner was asked what other evidence he had other than that stated in his statement, he answered:

"It would be this court would have the right to observe witnesses."

The trial court had the alleged incompetent before him and heard the statement as to what petitioner would prove. Petitioner urged that there ought to be such an interrogation of the party that this court will itself be able to determine this matter on evidence. Not only did the court have full opportunity to see the claimed incompetent but at her request, he heard her and she joined in the motion of intervener to dismiss petition.

■ We are of the opinion that the case stood before the court as if the witnesses to prove the statements made by petitioner had been heard. Nothing additional would have been presented except for the court to observe the witnesses. But the person that was of concern to the court was before the court and spoke for herself. Any further lengthy hearing could have given the court no more than it had.

Nor are we convinced that the failure of Mrs. Valentine to take her attorney's advice and appeal is evidence of incompetence, nor that both the suit brought by the Western States Refining Company and the suit to enforce the option should have been appealed.

The record in this case discloses that Mrs. Valentine has a son who was 20 and a daughter who was 18 at the time of the hearing; that she had during these proceedings two sisters and a brother, all adults, and also an uncle who appeared as her attorney in the option case.

There was no suggestion that any physician would testify that she was incompetent at any time during the proceedings.

It might appear that her giving an option for five years for a consideration of $1,000 at $1 a share was erratic, when petitioner alleged she paid $2 per share for it. But it was asserted at the argument of this case, and without contradiction, that testimony was offered by a stock broker at the hearing of the option case that the stock was worth not more than 90 cents per share at the time the option was given.

It will be conceded that her conduct in failing to appear at the second day of the trial of the option case was odd. Yet neither her uncle, who prepared her answer, nor Herbert B. Maw, who represented her when she absented herself, nor her brother, a prominent business man in Salt Lake City, nor either of her sisters suggested the appointment of a guardian. As far as

those actions are concerned, the time when a guardian was needed was before and during the trial of those cases, not now after judgment has gone against her and because she refuses to appeal.

The attorney who represented her in the option case (No. 101780) was present when her deposition was taken; prepared an amended answer and was in court with her on May 2, 1955, yet he didn't see fit to suggest that she needed a guardian even when she failed to return for cross-examination on the following day. Nor was the trial judge who presided at that trial provoked to call her conduct to the attention of one of her relatives or friends in order that a guardian might be asked for.

There is in the record undisputed evidence that at the time the hearing for appointment of a guardian of the property of Florence S. Valentine came on regularly before the court it was stated that Mr. Arnovitz came into court at the trial of the Eliason (option) case and stated that he was there for the sole purpose of filing a petition to declare Mrs. Valentine incompetent. Mr. Arnovitz, in Judge Van Cott's chambers, produced from his pocket a petition, and Judge Van Cott said,

"If you want to file that petition I will entertain it. I will not go any further with this case, but I will issue an order expediting the hearing on your petition."

Mr. Arnovitz said, "I will do so." Later that day after a conference with Mr. James L. White, Mr. Arnovitz, addressing the court, said,

"Your Honor, I want to take back what I said about filing the petition, I would like to consider the matter further. Mr. White and I had a conference and I don't know why I should stick my neck out."

It is difficult to understand why the petition to have Mrs. Valentine declared incompetent was not filed and heard before a judgment was entered in the Eliason (option) case. Had the petition been filed before the case was concluded, the court would undoubtedly have appointed a guardian for Mrs. Valentine if justified, so that any further evidence available to her could have been presented, and so that any rights which were lost by reason of her failing to return August 3, 1955, for the further hearing of that case would have been protected.

Petitioner set out in the petition the following:

"* * * that since the entry of the judgment in the case of Western States Refining Company, Orders to Show Case have been served upon her ordering her to deliver some of the stock of the company for cancellation; that Florence S. Valentine has stated that the stock is out of her control and that she is firmly of the opinion that the judgment of the Court cannot effect her property interests and that she has ways and means of pre-

venting the Court from enforcing the judgment that has been entered; that this course of action, if persisted, will cause her to lose the rights and benefits that she has to appeal to the Courts of this State and that it will result in the eventual dissipation or at the very least, the loss of a considerable portion of the property which she owns and possibly of the loss of some property owned by her children."

There have been occasions where men prominent in public affairs have likewise entertained the opinion that the judgments of certain courts could be avoided and prevented from affecting them. It is stated that a President of the United States said of a decision of the Supreme Court of the United States, "John Marshall has made his decision—now let him enforce it." Currently we are witnessing the efforts of men in high places who feel that they, like Mrs. Valentine, have ways and means of preventing the courts from enforcing their judgments.

Such a course would not likely sustain a petition for appointment of a guardian of any of those learned gentlemen.

Neither does it necessarily follow that the discharge of an attorney proves the client incompetent. Our professional pride might well wish it were otherwise.

It cannot be denied that Mrs. Valentine was unwilling to act as requested by peti-

tioner. She stated she didn't want to appeal, she asked petitioner to dismiss the appeal. But there is here no suggestion that Mrs. Valentine was unable to act had she been so disposed.

In the case of In re Heath [1] this court recounted some of the evidence to the effect that the alleged *incompetent counted dishes* while he washed them, that he took *no interest in financial matters*, that certain of his relatives ridiculed him and that his house was not very clean.

Section 75–13–20, U.C.A.1953 provides as follows:

"The words 'incompetent,' 'mentally incompetent' and 'incapable,' as used in this title, shall be construed to mean any person who though not insane, is, by reason of old age, disease, weakness of mind, or from any other course, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

This court observed at page 6 of 102 Utah, at page 1061 of 126 P.2d:

"The section implies physical or mental defects which interfere with the rational functioning of the mind. If the mind functions rationally but the individual acts in a way commonly designated as eccentric—that is, his acts deviate from the usual principally be-

1. 102 Utah 1, 126 P.2d 1058.

cause he is less susceptible to public opinion than are many of us—he is not incompetent. One may love gardening —it was so testified of Mr. Heath, and not be interested in anything else even to the extent of losing his property at the hands of unscrupulous friends or relatives. He may be foolish in the eyes of many of us, but he is not incompetent. Competency is not measured by one's ability to accumulate and hold the material things of life. Were it so, there would be many of our ministerial brethren—not to mention some of our learned judicial associates— behind mental bars. *Material loss in and of itself is a very dangerous bit of evidence from which to reason backward to a conclusion of incompetency.* Such loss may be attributable to any number of causes such as indifference, laziness, lack of education, poor business judgment, dislike of a particular class of work or business—there are many possibilities. Thus in passing upon the question of incompetency, we must determine if the evidence of loss is accompanied by evidence of physical or mental defect which interferes with the rational functioning of the mind. Undue influence arising from deep friendship for, or extreme confidence in others, alone, is not evidence of incompetency of the victim. It may be the instrumentality used upon an incompetent victim but there must be other evidence of that incompetence.

Strong mentalities are ofttimes the victims of undue influence." (Emphasis ours.)

The right of every individual to handle his own affairs even at the expense of dissipating his fortune is a right jealously guarded and one which will not be taken away except in extreme cases. No such case is presented here. The facts alleged do not indicate an inability to properly manage property. An uncooperative attitude or mistake as to business principles or legal rules is not sufficient to warrant the appointment of a guardian.

Respondent contends that petitioner does not meet the requirement of the statute— being a friend or relative of the claimed incompetent. We deem it unnecessary to pass upon that question, since we are of the opinion that the trial court having found Florence S. Valentine to be competent, that finding will not be disturbed.

Affirmed. Each party to bear his own costs.

McDONOUGH, C. J., and HENRIOD, J., concur.

CROCKETT, Justice (concurring).

I concur in affirming the order dismissing the petition. However, in view of the fact that, as stated in the main opinion, "the order [of dismissal] was made upon the allegations of the petition and the

statement of petitioner in open court without any evidence being taken * * *." I think we are obliged to review the representations made to the court in the light most favorable to the petitioner.

It is not for us to conjecture how the witness or witnesses would have impressed the court had the matter been tried and had they testified. It is the uniformly accepted rule that, where a motion is made for summary dismissal before evidence is presented, the court surveys the matter as it then stands in the light most favorable to the party against whom the motion is made.[2] This is also true even after evidence has been presented, if the motion is made before the party has rested his case.[3] If the motion is granted the appellate court similarly reviews the record.[4]

From whatever perspective we review the matter, I think the trial court was correct in dismissing the petition because there appears no basis in the petition, or in the statement of Mr. Arnovitz from which reasonable minds could find that Mrs. Valentine was incompetent.

WADE, J., concurs in the opinion of CROCKETT, J.

2. Holland v. Columbia Iron Min. Co., 4 Utah 2d —, 293 P.2d 700. See Morris v. Farnsworth Motel, Utah, 259 P.2d 297, 298; Strauss v. Strauss, 90 Cal.App. 2d 757, 203 P.2d 857, 858.

3. Arnold v. Sanstol, 43 Wash.2d 294, 260 P.2d 327; Metzger v. Quick, 46 Wash.2d 477, 282 P.2d 812; Eberle v. Hungerford, Colo., 274 P.2d 93; Wood v. Chicago, M. & St. Paul R.R. Co., 45 Wash. 2d 601, 277 P.2d 345.

4. Martin v. Stevens, Utah, 243 P.2d 747; Moedy v. Moedy, Colo., 276 P.2d 563; Leming v. Oil Fields Trucking Co., 44 Cal.2d 343, 282 P.2d 23; 88 C.J.S., Trial, § 242.