**In the Matter of the GUARDIANSHIP of Alice KESLER.**

**No. 15960.**

Supreme Court of Utah.

May 28, 1980.

Byron L. Stubbs, Salt Lake City, for appellant.

Dan S. Bushnell & Larry R. White of Kirton & McConkie, Salt Lake City, for respondent.

MAUGHAN, Justice:

Alice Kesler appeals from an order of the district court declaring her an incompetent, within the definition as set forth in Section 75–13–20, and appointing a guardian of her estate. Appellant challenges the sufficiency of the evidence to sustain the ruling. There is merit to appellant's argument; [1]

---

1. The irregularities in the manner in which the hearing before a pro tem judge in the district court must be included in an evaluation of the evidence. The petitioners had the deposition of Mrs. Kesler read into the record, although she was physically present and testified extensively on her own behalf at the conclusion of petitioner's case. The only other witness petitioners called was Mrs. Kesler's legal counsel to adduce evidence in regard to the legal services he had performed for her. The court found Mrs. Kesler was unable, without assistance, to manage some aspects of her business holdings by reason of their complexity. Her counsel had performed certain services, and the court found Mrs. Kesler had delegated managerial duties to others, who were not required to make an accounting. This finding constitutes an odd description of the fiduciary relationship between client and counsel. Furthermore, a person's inability to manage his property without assistance so as to merit the appointment of a guardian does not relate to either menial tasks or the use of experts or professional aid in that management, particularly legal counsel. *In re Guardianship of Bogan*, Okl., 441 P.2d 972, 975 (1968). There is an unmistakable element of vindictiveness involved, two of the petitioners, sons of Mrs. Kesler, had claimed some of her most valuable property as theirs. Mrs. Kesler prevailed in a quiet title action, *Kesler v. Kesler*, Utah, 583 P.2d 87 (1978). These same children then sought to deprive her of control of her estate, which with the assistance of counsel, she had conserved from the predatory designs of her children. As a further irony, the trial judge found that Mrs. Kesler was engaging in lawsuits which she did not understand which were dissipating the assets of her estate to a

substantial degree. The only evidence she was subject to deception by an artful and designing person concerned her testimony involving a conveyance in joint tenancy to her son, David. She claimed he had deceived her as to the nature of the document she signed. In *Kesler v. Kesler*, Case No. 15520, January 24, 1979, an unpublished opinion, this Court affirmed a finding of the trial court that Mrs. Kesler had knowingly and willingly signed this joint tenancy deed. In the case of *In re Heath*, 102 Utah 1, 6–7, 126 P.2d 1058 (1942), the Court admonished you cannot reason backward to a conclusion of incompetency, viz., show material loss or undue influence to prove incompetency. ". . . Thus in passing upon the question of incompetency, we must determine if the evidence of loss is accompanied by evidence of physical or mental defect which interferes with the rational functioning of the mind. Undue influence arising from deep friendship for, or extreme confidence in others, alone, is not evidence of incompetency of the victim. It may be the instrumentality used upon an incompetent victim, but there must be other evidence of that incompetence. Strong mentalities are ofttimes the victims of undue influence." Also see *In re Valentine's Guardianship*, 4 Utah 2d 355, 362–363, 294 P.2d 696 (1956). Significantly, there was no finding Mrs. Kesler's physical defects (poor vision and hearing) interfered with the rational functioning of her mind. On the contrary, the trial court observed she was lucid and for her age had good, rather than bad, mental ability to deal with questions and problems. The testimony of Mrs. Kesler's legal counsel remains uncontradicted that she made all of her decisions; she could not be coerced; she instructed others as to her choices. She

however, it is unnecessary for this Court to determine this issue for the reasons set forth infra. The judgment of the district court is reversed, and this matter is remanded with an order to discharge the guardian.

The petition seeking the appointment of a guardian of the estate of Alice Kesler was filed June 30, 1977. This was one day prior to the effective date, July 1, 1977, of the Utah Uniform Probate Code. Coinciding with this date, was the repeal of Section 75–13–1 to 75–13–54, the Chapter concerning guardianship. The petitioners successfully urged that this proceeding was controlled by the prior statutory provisions contained in Sections 75–13–19 and 20. All the evidence was adduced and the findings were designed to meet the statutory elements set forth in Section 75–13–20. Finally, the trial court in its conclusions of law stated:

"Alice Kesler is incompetent within the definition and the meaning of the law as set forth in Utah Code Annotated, Section 75–13–20, and by reason of the infirmities and problems specified above, a guardian should be appointed for the estate of Alice Kesler."

The determination of the trial court was erroneous that it could proceed under the repealed statutes, merely because the petition was filed one day prior to Sections 75–13–19 and 20 becoming a nullity. The matter should have proceeded and been determined under Part 4 (Sections 75–5–401 to 433) of the Utah Uniform Probate Code; such a course is provided under the relevant provisions of Section 75–8–101.

Section 75–8–101 provides:

"(1) This code takes effect on July 1, 1977.

(2) Except as provided elsewhere in this code, on the effective date of this code:

\*     \*     \*     \*     \*     \*

(b) The code applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this code."

There is no finding by the trial court involving the specified exceptions, and there appears no basis in the record to so rule. Since the petition was filed one day prior to the effective date of the new code, the petition should have been amended to include the facts required under Section 75–5–404(2). The proceedings and determination of the court should have been in accordance with Section 75–5–401(1)(b), particularly since the concern of the court was directed solely to the management of Mrs. Kesler's property and not to a guardianship of her person.

The order of the district court is a nullity, because it is predicated on a statutory scheme which had been repealed and was contrary to the explicit statutory provisions of Section 75–8–101, which specified the

had the intelligence to procure assistance when needed, e. g., if she were going to sell cattle she consulted an expert to look at her cattle and advise whether it was a propitious time to sell. The attorney testified she was competent, for she knew what she was doing and was able to make her decisions. The court's finding of incompetence was primarily predicated on the fact that because of Mrs. Kesler's poor eyesight she required assistance, which created an opportunity for mischief. Such a ruling is tantamount to a declaration as a matter of law that all persons with substantial visual impairment are per se incompetent—such is not the law. Rather than adhering to the law the court's decision reflected sheer paternalism, the court stated: "That I respect you and I admire your spunk. I am going to have to make a decision here today and that decision I hope will be helpful to you for the simple reason that I now have a picture of you at 78 (sic 87) years of age. One of these days it might be nice for you to—as the kids say—hang loose. Sit back and let some competent, responsible person handle your affairs. All you would have to do is endorse checks and go to weddings and family reunions and what not. . . ." Thereafter, the court construed Section 75–13–20 to include as an incompetent a person, who because of limited eyesight requires the assistance of others to manage his property, for a person with such a condition creates an opportunity to be deceived or imposed upon by artful and designing persons.

Utah Uniform Probate Code was to be applied to this proceeding.

CROCKETT, C. J., and STEWART, J., concur.

HALL, Justice (dissenting):

The opinion as circulated would dispose of the case on a point neither raised below nor on appeal. Such represents an unwarranted departure from the traditional rules of appellate review and may well work a substantial injustice since neither of the parties have been afforded an opportunity to argue or brief the issue.

I am also not persuaded that there is any lack of substantial, competent evidence in the record to support the judgment of the trial Court.

I would affirm.

WILKINS, J., concurs in the views expressed in the dissenting opinion of HALL, J.